**[J-40-2015]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| DAVID M. SOCKO, | : No. 142 MAP 2014 |
| | : |
| Appellee | : Appeal from the Order of the Superior |
| | : Court dated May 13, 2014 at No. 1223 |
| | : MDA 2013, affirming the Order of the |
| v. | : Court of Common Pleas of York County, |
| | : Civil Division, dated October 15, 2012 at |
| | : No. 2012-SU-001608-44 |
| MID-ATLANTIC SYSTEMS OF CPA, | : |
| INC., | : ARGUED:  May 6, 2015 |
| | : |
| Appellant | : |

**OPINION**

**MADAME JUSTICE TODD**                    **DECIDED:  November 18, 2015**

In this appeal by allowance, we consider an issue of first impression:  whether the enforcement of an employment agreement containing a restrictive covenant not to compete, entered into after the commencement of employment, may be challenged by an employee for a lack of consideration, where the agreement, by its express terms, states that the parties "intend to be legally bound," which language implicates the insulating effect of the Uniform Written Obligations Act ("UWOA").[1]  In light of our Commonwealth's long history of disfavoring restrictive covenants, and the mandate that covenants not to compete entered into after the commencement of employment must be accompanied by new and valuable consideration — a benefit or change in

---

[1] Act of May 13, 1927, P.L. 985, No. 475, § 1 (33 P.S. § 6).

employment status — we conclude an employee is not precluded from challenging such an agreement executed pursuant to the UWOA. Thus, we affirm the order of the Superior Court.

The facts underlying this appeal are not in dispute. Appellant Mid-Atlantic Systems of CPA, Inc. ("Mid-Atlantic") is in the business of providing basement waterproofing services. Mid-Atlantic hired Appellee David Socko ("Socko") in March 2007 as a salesperson. At this time, Socko executed a two-year employment contract containing a covenant not to compete. In February 2009, Socko resigned from his employment with Mid-Atlantic, but the company rehired him four months later, in June 2009. At his time of rehire, Socko signed a new employment agreement containing another two-year covenant not to compete.

While still employed by Mid-Atlantic, on December 28, 2010, Socko signed a third, more restrictive, agreement, entitled "the Non-Competition Agreement" ("Agreement"), which, by its terms, superseded all prior agreements. Pursuant to the Agreement, which is at the heart of his appeal, Socko was not permitted to compete with Mid-Atlantic for two years after the termination of his employment in any of the following locations: Connecticut, the District of Columbia, Delaware, Maryland, New Jersey, Pennsylvania, New York, Virginia, West Virginia, or any other jurisdiction in which Mid-Atlantic did business. The Agreement also expressly provided for the application of Pennsylvania law, and stated that the parties intended to be "legally bound."

On January 16, 2012, Socko resigned from his employment with Mid-Atlantic and, a few weeks later, accepted a position with Pennsylvania Basement Waterproofing, located in Camp Hill, Pennsylvania, which was a competitor of Mid-Atlantic. Approximately one month later, Mid-Atlantic informed Socko's new employer

of the terms of Socko's prior employment with Mid-Atlantic, attached a copy of the Agreement, and threatened litigation. Ten days later, Pennsylvania Basement Waterproofing terminated Socko's employment.

As a result of his termination, on April 13, 2012, Socko filed a Complaint and Action for Declaratory Judgment against Mid-Atlantic in the York County Court of Common Pleas. In support thereof, Socko filed a motion for partial summary judgment, asserting that the non-competition clause in the Agreement was unenforceable, as it was not supported by sufficient consideration. It was not disputed by the parties that the Agreement was signed during the course of Socko's employment, and that Socko did not receive any benefit or any change in his existing employment status in exchange for signing the Agreement. Mid-Atlantic, however, citing the parties' pledge in the Agreement to be "legally bound," contended that the UWOA did not allow Socko to challenge the validity of the terms of the Agreement on the basis of a lack of consideration.[2]

The trial court granted Socko's motion for partial summary judgment, offering in a well-written opinion, that there was a want of consideration in exchange for Socko's execution of the Agreement after he had commenced his employment. Further, the court reasoned that the mere intent by Socko, as expressed in the Agreement, to be "legally bound," did not constitute adequate consideration under the UWOA.[3]

---

[2] Pursuant to the dictates of the UWOA, a written promise "shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." 33 P.S. § 6.

[3] Socko also asserted claims against Mid-Atlantic pursuant to the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.3. These claims were settled and discontinued on June 12, 2013.

On appeal, a unanimous panel of the Superior Court, in a thorough and scholarly published opinion authored by Judge Christine Donohue, affirmed the trial court's granting of Socko's motion for partial summary judgment. Socko v. Mid-Atlantic Systems of CPA, Inc., 99 A.3d 928 (Pa. Super. 2014). After tracing the history of the treatment, and disfavor of, restrictive covenants in Pennsylvania, the court explained that, when an employee enters into an employment contract subsequent to the commencement of employment, which contains a covenant not to compete, the covenant must be supported by new consideration in the form of a benefit to the employee or a beneficial change to his or her employment status.

The court went on to consider the effect of the UWOA in light of the substantial common law public policy disfavoring restrictive covenants. The court acknowledged that the statute provided that a written promise shall not be invalid or unenforceable for lack of consideration if the writing also contains an express statement that the signer "intends to be legally bound," 33 P.S. § 6, and that Pennsylvania courts have interpreted this section to mean that, in certain circumstances, a written agreement containing the express statement to be legally bound is not void for lack of consideration. Nevertheless, the Superior Court observed that, while, typically, and under the UWOA, courts will not inquire as to the adequacy of consideration, the area of restrictive covenants in employment contracts is an exception to this general rule. Importantly, the court pointed out that, while our Court has held that a contract under seal imports consideration which a party is not permitted to deny, such a seal is deemed inadequate consideration to support a covenant in restraint of trade; furthermore, the Superior Court reasoned that the seal and the UWOA had the same legal effect — to import consideration into a contract and eliminate the need for evidence of consideration.

Thus, the court concluded that for a covenant not to compete to be enforceable, an employee must receive actual and valuable consideration for signing an employment agreement containing such a restrictive covenant, and that contract language "agreeing to be legally bound," which satisfies the UWOA, nevertheless fails to provide the employee an actual benefit, and, therefore, is inadequate to support the enforcement of such a covenant. As Mid-Atlantic did not provide actual and valuable consideration to Socko when he executed the Agreement, the Superior Court concluded that the trial court properly found the Agreement to be unenforceable.

Mid-Atlantic filed a petition for allowance of appeal, which we granted to address the following question: whether an employment agreement containing a restrictive covenant not to compete, entered into after the commencement of employment, is unenforceable for lack of consideration where the employer provided the employee with no benefit or change in employment status at the time of execution, but where the agreement expressly states that the parties "intend to be legally bound" by its terms. See Socko v. Mid-Atlantic Systems of CPA, Inc., 105 A.3d 659 (Pa. 2014) (order).[4] As

_____

[4] We granted allocatur on three issues, as raised by Mid-Atlantic, but these issues more accurately represent sub-arguments pertaining to the singular issue before the Court. The issues on which we granted appeal are:

> 1) Did the Superior Court misconstrue the [UWOA] considering the UWOA is not a "substitute for consideration," nor is it intended to "rectify a lack of consideration" as the Superior Court asserts, but instead, is a statute that merely prevents a party to a written agreement in which the party expresses an intention to be legally bound from later challenging that validity of the contract based upon lack of consideration?
>
> (2) Did the Superior Court erroneously rely upon allegedly analogous "seal" cases to support its determination that the UWOA does not provide consideration for a non-competition

(continued…)

the issue before us concerns the construction of the UWOA, and, thus, raises a pure question of law, our standard of review is *de novo*, and our scope of review is plenary. DEP v. Cumberland Coal Resources, LP, 102 A.3d 962, 970 (Pa. 2014); Buffalo Twp. v. Jones, 813 A.2d 659, 664 n.4 (Pa. 2002).

Mid-Atlantic's primary argument is that the Superior Court improperly determined that the UWOA serves as "consideration, or a substitute for consideration" and that the statute intended to "rectify a lack of consideration." Appellant's Brief at 15. Mid-Atlantic submits that the UWOA is not a substitute for consideration, but, rather, prohibits a party to a written agreement in which the party expresses an intention to be "legally bound" from later challenging the contract based on a lack of consideration.[5] Mid-Atlantic agrees with Socko that additional valuable consideration must be provided to an employee that signs a non-compete subsequent to the commencement of the employment relationship, but takes the position that, even if there is not additional valuable consideration, as the case here, nevertheless, under the UWOA, the "legally bound" language acts as a bar to a challenge to the validity of the agreement based upon a lack of consideration, citing McGuire v. Schneider, Inc., 534 A.2d 115, 118 (Pa.

---

(…continued)

> restrictive covenant entered into subsequent to the commencement of the employment relation, considering a seal on a document has long been held to [import] consideration, whereas, to the contrary, the UWOA does not [import] consideration, and the authority relied upon by the Superior Court did not support this conclusion[?]
>
> (3) Did the Superior Court impermissibly amend the UWOA under the guise of interpreting it?

[5] While it is questionable whether this estoppel line of advocacy was fully raised before the tribunals below, we will nevertheless address Mid-Atlantic's arguments in this regard.

Super. 1987) ("Under the [UWOA], that statement of intent removes lack of consideration as a ground for avoiding the contract."), as well as certain federal and trial court decisions in support of its position.

Mid-Atlantic goes on to list numerous rights which a party may contract away for a benefit, such as the right to a jury trial, forum selection, right to seek relief in court, and choice of law. Here, according to Mid-Atlantic, the agreement to be legally bound contracts away the right to later challenge the contract on the basis of a lack of consideration. For this reason, Mid-Atlantic further asserts that the Superior Court's reliance on contract-under-seal cases is misplaced, as in Mid-Atlantic's view, the seal (supplying consideration to support a covenant) and the UWOA (prohibiting a later challenge for lack of consideration), as described above, do not have the same effect. Mid-Atlantic rejects as *dicta* language in the cases relied upon by the Superior Court for the proposition that a seal and the UWOA share the same legal effect — namely, to import consideration into a contract and eliminate the need for proof of the existence of consideration. See Morgan's Home Equip. Corp. v. Martucci, 136 A.2d 838 (Pa. 1957); Fedun v. Mike's Café, Inc., 204 A.2d 776 (Pa. Super. 1964).

Related thereto, Mid-Atlantic argues that, while the import of the seal under the common law may be altered by courts, the UWOA may not be rewritten by the Superior Court under the guise of interpretation. Employing tools of statutory construction, Mid-Atlantic maintains that the plain and unambiguous language of the UWOA controls over any offering by Socko of the history of the Model Act, as discussed more fully below. Mid-Atlantic stresses that the Superior Court may not legislate, and, here, the clear language of the UWOA covers all agreements, including the Agreement at issue herein, which contain the operative language of the UWOA. Mid-Atlantic also urges our Court to decline Socko's request to find an exception to the UWOA for non-compete

agreements where none exists, and to hold that a non-competition restrictive covenant entered into after the commencement of employment may not be deemed to be void for lack of consideration pursuant to the UWOA when the employee agrees to be legally bound by its terms.

Socko counters that Mid-Atlantic's interpretation of the UWOA is inconsistent with the well-established principle that a restrictive covenant entered into after the commencement of the employment relationship is not enforceable — that is, is void as against public policy — if it lacks valuable consideration. Socko provides that restrictive covenants historically have been disfavored by the courts, as they are viewed as a restraint of trade preventing a former employee from earning a living. Socko asserts that, on one hand, Mid-Atlantic accepts that the UWOA is not a substitute for consideration, and does not disturb the requirement that valuable consideration is needed to support a restrictive covenant; but, on the other hand, Mid-Atlantic avers the UWOA nevertheless precludes a party to a non-compete agreement from challenging the covenant if valuable consideration is not provided. Socko warns that, as the boilerplate language that the parties "intend to be legally bound" appears in almost every contract in Pennsylvania, the practical effect of Mid-Atlantic's interpretation of the UWOA would be the elimination of the consideration requirement for restrictive covenants. Contrary to Mid-Atlantic's position, Socko develops that our Court has stated that the UWOA's language as applied to a typical contract *is* a substitute for consideration. See Morgan's. Socko further rejects Mid-Atlantic's reliance on the Superior Court's decision in McGuire for the proposition that the UWOA acts as a bar to a challenge based on lack of consideration, as, according to Socko, that decision did not involve a restrictive covenant, the reference to the UWOA was *dicta*, and subsequent Superior Court decisions involving restrictive covenants have made clear

that the UWOA is not a remedy for a lack of consideration for a restrictive covenant in an employment agreement.

Further, Socko maintains that the Superior Court's citation to contract-under-seal cases was appropriate, as the language which satisfies the UWOA serves as a substitute for consideration in the same manner that a seal serves as a substitute for consideration. Socko offers that a "contract under seal imports consideration that a party is not permitted to deny," Appellee's Brief at 9 (quoting Gompers v. Rochester, 56 Pa. 194, 197 (1868)), but highlights that the only exception to the rule is when the contract involves a restraint of trade, citing Selden v. Jackson, 230 A.2d 197, 197-98 (Pa. 1967). Socko further argues that reliance upon seal decisions was proper, noting that in Morgan's, our Court stated that the practical effect of a statement of intent to be legally bound under the UWOA is the equivalent of signing the agreement under seal.

Similarly, Socko responds to Mid-Atlantic's claim that the Superior Court effectively amended the UWOA, pointing out that the court carefully and correctly applied 150 years of jurisprudence regarding agreements in restraint of trade to the facts of this case. Indeed, Socko highlights Professor Samuel Williston's understanding of the UWOA when he drafted the Model Act in 1925, and envisioned it to act as a moderate and reasonable substitute to the use of seals. Further, Socko emphasizes that the Model Act was promulgated in 1925, Pennsylvania enacted the statute in 1927, and while Utah, the only other state to do so, adopted the UWOA in 1929, it repealed the statute four years later, leaving Pennsylvania as the only state to retain the uniform rule. Socko emphasizes, however, that it was never suggested that the statute was enacted to circumvent Pennsylvania law regarding agreements in restraint of trade, which, according to Socko, was well-established at the time the UWOA was enacted.

*Amicus* Richard Matesic, a solo practitioner from Shaler Township, Allegheny County, Pennsylvania, who represents individuals in employment and consumer protection litigation, provides a history of the UWOA and disputes Mid-Atlantic's interpretation of the act as being against the public policy of the Commonwealth, which prohibits the enforcement of a non-competition agreement without adequate consideration and which discourages restraints of trade. *Amicus* contends that, while there exists no legislative history regarding the passage of the UWOA, the various commissioners of the National Conference of Commissioners on Uniform State Laws, including Professor Williston, "advanced a libertarian view, one that frankly ignored the social costs attendant in enforcement of adhesive contracts; they believed any person should be free to bind themselves irrevocably to an obligation, simply by signing a document containing the words that the promisor 'intend[ed] to be legally bound.'" Amicus Brief at 8. Yet, *Amicus* maintains that, at these discussions, Williston also was of the view that the statute would not prevent a court sitting in equity from refusing to enforce a signed agreement containing the "legally bound" verbiage. According to *Amicus*, application of the UWOA would lead to an absurd and unreasonable result, as restraints on trade have been historically disfavored in the law, new and valuable consideration must be conferred on a currently employed individual for a new promise not to compete, and application of the UWOA, as interpreted by Mid-Atlantic, would deprive a court from ever determining whether adequate compensation was paid.

Our analysis begins with a review of our Commonwealth's treatment of employment agreements containing restrictive covenants at common law. Well before Horace Wood's 1877 treatise on master and servant,[6] which widely accelerated the universal adoption of the at-will employment doctrine by the various states,

---

[6] H. Wood, A Treatise on the Law of Master and Servant § 136 (2d ed. 1886).

Pennsylvania embraced the notion that, in employment contracts of indefinite duration, either party could sever that relationship at will — that is, for any reason or no reason. Kirk v. Hartman & Co., 63 Pa. 97, 105 (1870) ("When . . . a person is employed as an agent, traveller [sic] or salesman, for no definite time, the law does not imply a hiring by the year, but at the will of both parties, and the principal has a right to terminate it at any time, and to discharge the agent from his service without notice."); Peacock v. Cummings, 46 Pa. 434, 437 (1864) ("Duration of service was left to be defined by agreement, outside of the articles, or, if not defined, it was necessarily at will."). While of considerable vintage, the at-will doctrine retains its vitality in Pennsylvania to this day. Weaver v. Harpster, 975 A.2d 555 (Pa. 2009); Henry v. Pittsburgh & Lake Erie R.R. Co., 21 A. 157 (Pa. 1891).

The at-will employment doctrine, however, is subject to certain exceptions, including, *inter alia*, statutory restrictions, judicially-created notions of public policy, and contractual provisions, which may serve as a limitation on the otherwise broad power to terminate the at-will employment relationship. One aspect of a contractual exception to the at-will doctrine, directly at issue in this appeal, is a restrictive covenant not to compete. In the absence of an agreement between an employer and employee to the contrary, the law does not prohibit an employee from competing with his former employer after the employee's service has been terminated. Morgan's, 136 A.2d at 844. Non-competition restrictive covenants typically prohibit competition by a former employee for a specified time within a designated geographical area. Such covenants may serve to safeguard an employer's protectable business interests which may relate to an employee's special skills; the safeguarding of customer goodwill; proprietary business information, including processes, trade secrets, and inventions; as well as the time and resources the employer has invested in the training of its employees.

While a covenant not to compete may be desirable and justified in some circumstances on the part of an employer, Pennsylvania courts have historically viewed such covenants as contracts in restraint of trade that prevent a former employee from earning a livelihood, and, therefore, have disfavored such provisions in the law. See, e.g., Hess v. Gebhard & Co. Inc., 808 A.2d 912, 917 (Pa. 2002); Morgan's, 136 A.2d at 844. As our Court has explained:

> It has long been the rule at common law, that contracts in restraint of trade made independently of a sale of a business or contract of employment are void as against public policy regardless of the valuableness of the consideration exchanged therein.

Morgan's, 136 A.2d at 845.

While generally disfavored, Pennsylvania law, however, has recognized the validity and enforceability of covenants not to compete in an employment agreement, assuming adherence to certain requirements. See Pulse Technologies, Inc. v. Notaro, 67 A.3d 778 (Pa. 2013); Morgan's, 136 A.2d at 844; see generally Kurt H. Decker, Refining Pennsylvania's Standard for Invalidating a Non-Competition Restrictive Covenant When an Employee's Termination is Unrelated to the Employer's Protectible Business Interest, 104 Dick. L. Rev. 619 (2000). Our Court noted in Morgan's the evolution of the treatment of restrictive covenants. Such covenants were first found to be absolutely void as against public policy due to a high societal demand for, but low supply of, skilled workers. Later, due to the reality of the new era brought on by the industrial revolution, a more balanced approach was taken by the courts which accepted partial restraints on trade, provided they were ancillary to the employment relationship and reasonably limited:

> Such general covenants not to compete present centuries old legal problems. The earliest cases were decided against

the economic background of a chronic shortage of skilled workers in England, the result of the virulent epidemics of the Black Death during the fourteenth century. It was not surprising, then, that all covenants to refrain from practicing a trade were held to be void as against public policy. This policy carried over into the early seventeenth century when the grants of exclusive trading privileges by the Sovereign caused widespread public indignation which broadened into a dislike for all restraints upon the free exercise of trade. However, by the eighteenth century England found itself in the midst of a new commonercial [sic] era, and adjusting to changed economic conditions, the courts upheld at common law contracts in partial restraint of trade provided they were ancillary to a principal transaction, and were reasonably limited both in geographical extent and duration of time.

Morgan's, 136 A.2d at 844; see also Hess, 808 A.2d at 917-18.

Consistent with this legal background, currently in Pennsylvania, restrictive covenants are enforceable only if they are: (1) ancillary to an employment relationship between an employee and an employer; (2) supported by adequate consideration; (3) the restrictions are reasonably limited in duration and geographic extent; and (4) the restrictions are designed to protect the legitimate interests of the employer. Hess, 808 A.2d at 917; Piercing Pagoda, Inc. v. Hoffner, 351 A.2d 207, 210 (Pa. 1976); Morgan's, 136 A.2d at 844-46.

As with other contracts, for an employment agreement containing a restrictive covenant to be enforced, consideration is crucial, whether the covenant is entered into prior to, during, or after employment ends. Thus, to be valid, a covenant not to compete must be consummated with the exchange of consideration. Capital Bakers Inc. v. Townsend, 231 A.2d 292, 293-94 (Pa. 1967) (restrictive covenant in employment contract executed 12 years after the start of employment was unenforceable for lack of consideration). If a noncompetition clause is executed at the inception of the employment, the consideration to support the covenant may be the award of the

position itself. <u>Barb-Lee Mobile Frame Co. v. Hoot</u>, 206 A.2d 59, 61 (Pa. 1965); <u>Morgan's</u>, 136 A.2d at 845 (holding covenant not to compete may be enforceable if contained in an employment agreement executed upon the "taking of employment"). However, a restrictive covenant is not required to be included in the initial employment contract to be valid. <u>Jacobson & Co. v. Int'l. Environment Corp.</u>, 235 A.2d 612, 618 (Pa. 1967); <u>see</u> <u>generally</u> Jordan Liebman and Richard Nathan, <u>The Enforceability of Post-Employment Noncompetition Agreements Formed After At-Will Employment Has Commenced: The "Afterthought" Agreement</u>, 60 S. Cal. L. Rev. 1465 (1987). There are legitimate reasons for this, including the development of a worker's expertise, but only after employment for a period of time:

> [I]n many instances, . . . the insertion of a restrictive covenant in the original contract would serve no valid purpose. An employer who hires a novice has no desire to restrict his present competitive force. Only when the novice has developed a certain expertise, which could possibly injure the employer if unleashed competitively, will the employer begin to think in terms of the protection of a restrictive covenant.

<u>Jacobson & Co.</u>, 235 A.2d at 618.

When a non-competition clause is required after an employee has commenced his or her employment, it is enforceable only if the employee receives "new" and valuable consideration — that is, some corresponding benefit or a favorable change in employment status. <u>See</u> <u>Pulse Technologies, Inc.</u>, 67 A.3d at 781-82. Sufficient new and valuable consideration has been found by our courts to include, *inter alia*, a promotion,[7] a change from part-time to full-time employment,[8] or even a change to a

---

[7] <u>M.S. Jacobs and Assoc., Inc. v. Duffley</u>, 303 A.2d 921, 923 (Pa. 1979).
[8] <u>Modern Laundry & Dry Cleaning Co. v. Farrer</u>, 536 A.2d 409, 411 (Pa. Super. 1988).

compensation package of bonuses, insurance benefits, and severance benefits.[9]

Without new and valuable consideration, a restrictive covenant is unenforceable. Maintenance Specialties Inc. v. Gottus, 314 A.2d 279, 281 (Pa. 1974). More specifically, the mere continuation of the employment relationship at the time of entering into the restrictive covenant is insufficient to serve as consideration for the new covenant, despite it being an at-will relationship terminable by either party. Pulse Technologies, Inc.; George W. Kistler, Inc. v. O'Brien, 347 A.2d 311, 316 (Pa. 1975) (plurality).

In sum, while at common law, covenants in restraint of trade have long been disfavored by Pennsylvania courts, an agreement containing a non-compete clause will be upheld, if, among other considerations, it is supported by adequate consideration. In the context of requiring an employee to agree to a restrictive covenant mid-employment, however, such a restraint on trade will be enforceable only if new and valuable consideration, beyond mere continued employment, is provided and is sufficient to support the restrictive clause.

As the interplay between this common law treatment of restrictive covenants and the effect of a statute — here, the UWOA — is at issue, we next turn to the guiding principles set forth in the Statutory Construction Act. 1 Pa.C.S. §§ 1501 et seq. Pursuant to that enactment, the objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Id. § 1921(a). "The best indication of the legislature's intent is the plain language of the statute." Dorsey v. Redman, 96 A.3d 332, 340 (Pa. 2014). When considering statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). Further, when

---

[9] Davis & Wade, Inc. v. Tripodi, 616 A.2d 1384, 1387 (Pa. Super. 1992).

the words of a statute are clear and unambiguous, there is no need to go beyond the plain meaning of the language of the statute "under the pretext of pursuing its spirit." Id. § 1921(b). Thus, only when the words of a statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through considerations of other factors enumerated in Section 1921(c). Id. § 1921(c); see generally Bayada Nurses Inc. v. Com. Dept. Labor and Indus., 8 A.3d 866, 880-81 (Pa. 2010).

Through certain additional canons of construction, the legislature has provided further guidance. The General Assembly counsels that it does not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S. § 1922. Moreover, the rule that statutes in derogation of the common law are to be strictly construed — ostensibly, so as to not drastically change the existing law — shall have no application to the statutes of this Commonwealth enacted after September 1, 1937, id. § 1928(a); thus, stated in the affirmative, and as applied to this matter, the UWOA, enacted in 1927, to the degree it is in derogation of the common law, must be strictly construed. 1 Pa.C.S. § 1928(b)(8).

With the common law treatment of restrictive covenants in employment contracts, as well as the guiding principles of statutory construction, in hand, we turn to consider how an employee's challenge to the enforcement of an employment agreement containing a restrictive covenant not to compete, entered into after the commencement of employment and without consideration, yet containing the language "intend[ing] to be legally bound," is impacted by the UWOA.

Initially, we look to the language of the UWOA itself. We note that, by its terms, the UWOA commands that a written promise "shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." 33 P.S. § 6. Our

caselaw has explained that, generally, this section provides that a written agreement will not be deemed to be void for lack of consideration if it contains an express statement that the signer intends to be legally bound, Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 433 (Pa. 2004), and, more explicitly, has interpreted this provision to supply the necessary consideration for an agreement. See Morgan's, 136 A.2d at n.12 (parties' express intention to be legally bound within meaning of UWOA has the same effect in importing consideration as a seal on the agreement). Mid-Atlantic, however, rejects this interpretation and, as noted above, claims that the "legally bound" language does not act as a substitute for consideration, but, rather, bars the signer from challenging the agreement on the basis of a lack of consideration.

In light of the clear and unambiguous language of the UWOA, and consistent with our prior caselaw, we reject Mid-Atlantic's view and conclude that a contract containing a written express statement of intent to be "legally bound" supplies the necessary consideration to support the enforceability of an agreement. The UWOA does not speak of extinguishing a cause of action or barring a challenge, but, rather, speaks in terms of merits or relief — if the promise is to be legally binding, the contract "shall not be invalid or unenforceable for lack of consideration." 33 P.S. § 6.

Further, even if we were to find the language to be unclear in this regard, while there is no legislative history from our General Assembly regarding the passage of the UWOA, the history underlying the creation of the uniform law shows that the drafter of the UWOA, the famed Professor Samuel Williston, specifically intended to revive the function of the seal as it formerly existed but without the formality, ritual, and shortcomings associated with seals. Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Thirty-Fifth Annual Meeting (Detroit, Michigan 1925) at 194-97; Amicus Brief at 9-10. This being the case,

the UWOA was viewed as providing a substitute for the seal — thus providing consideration — and, consistent with the language of the statute, the lack of actual consideration would not result in an invalid or unenforceable agreement. Therefore, for these reasons, we reject Mid-Atlantic's interpretation of this statutory provision as prohibiting a signatory to the agreement from challenging the contract on the basis of a lack of consideration.

Ultimately, however, whether the UWOA provides the necessary consideration, akin to the seal, or whether the provision renders an agreement immune from challenge, the practical effect is the same: any party challenging the validity of a contract containing an express intent to be legally bound will not be entitled to relief from the agreement on the basis that the promises made therein lack consideration. Thus, based solely upon the language of the UWOA, it appears that, despite the lack of consideration, the Agreement would be enforceable against Socko.

This is not the end of our analysis, however, as we must take into account the additional considerations found in the General Assembly's cannons of statutory construction. Specifically, we must determine if such an interpretation of the statute leads to an absurd or unreasonable result. 1 Pa.C.S. § 1922. Moreover, in interpreting the legislature's intentions, we must, according to the dictates of the Statutory Construction Act, strictly construe the UWOA, because it was enacted prior to September 1, 1937, and because it is in derogation of the common law mandating that restrictive covenants be supported by actual consideration. 1 Pa.C.S. § 1928(b)(8).

We consider whether applying the plain language of the UWOA, to deny relief to an employee challenging a restrictive covenant on the basis of a lack of consideration, will lead to an unreasonable result. First, as detailed above, our Commonwealth has a long, and virtually uniform, history of strongly disfavoring covenants in restraint of trade.

While beneficial and necessary in some ways to an employer, our courts have recognized the unique and heavy burden placed upon an employee in attempting to earn a living when subjected to a restrictive covenant. Indeed, contracts containing restrictive covenants are treated as unique in the law, and we find it significant that, even with respect to a contract under seal, an exception was recognized for contracts involving a restraint of trade. Gompers, 56 Pa. at 197 (agreement in restraint of trade "is the only exception to the rule, that a contract under seal imports consideration which a party is not permitted to deny"); see also Newman v. Sablosky, 407 A.2d 448, 451 (Pa. Super. 1979) ("While a seal to an agreement imports consideration, the rule is inapplicable in a court of equity [to enforce a restrictive covenant.]"). Moreover, and consistent with this *sui generis* approach to agreements in restraint of trade, our courts have mandated, in the post-commencement employment scenario, strict compliance with various requirements, including new and valuable consideration, beyond mere continued employment, to permit enforcement of the restrictive covenant. Related thereto, and as can be drawn from the above discussion, our courts aggressively have reviewed the adequacy of consideration supporting such restraints on trade.

Upon consideration of the historic background regarding covenants not to compete, their relative positive and negative impact upon the employer-employee relationship, and their unique treatment in the law, including more rigorous scrutiny by our courts, we conclude that a construction of the UWOA which would vitiate the need for new and valuable consideration when entering into an agreement containing a restrictive covenant after the initiation of employment would be unreasonable. 1 Pa.C.S.A. § 1922. Moreover, our conclusion is buttressed by the narrow construction which must be given to the UWOA. 1 Pa.C.S. § 1928(b)(8). Thus, we hold that an employment agreement containing a restrictive covenant not to compete may be

challenged for a lack of consideration even though the agreement, by its express terms, indicates that the parties "intend to be legally bound" pursuant to the UWOA.

The order of the Superior Court is affirmed. Jurisdiction relinquished.

Mr. Chief Justice Saylor and Messrs. Justice Baer and Stevens join the opinion.

Mr. Chief Justice Saylor files a concurring opinion.

Mr. Justice Eakin files a dissenting opinion.