J-A09034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FANCY FOX, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC HANCHEY | : | |
| | : | No. 1277 WDA 2017 |
| Appellant | : | |

Appeal from the Order Entered August 30, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 17-009483

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                              **FILED MAY 09, 2018**

Eric Hanchey (Appellant) appeals from the trial court's order granting a two-year preliminary injunction in favor of Appellee, Fancy Fox, LLC (Fancy Fox) and ordering Appellant to provide an accounting of his activities to Fancy Fox within 30 days.  After careful consideration, we affirm.

The trial court summarized the factual background of this case as follows:

> This matter involves an "Agreement Not to Compete" (the "Agreement") between [Appellant] and Fancy Fox, LLC.  The Agreement was executed on January 1, 2015.  [Appellant] had since July 6, 2013 been an independent contractor with Fancy Fox, LLC first as a salesman and then as a Distribution Manager.  In that role he oversaw sales, screen-painting and embroidery operations.  [Appellant] was originally hired as an independent contractor salesman on July 6, 2013 and paid by Fox's Pizza Distribution.

Fancy Fox, LLC was formed in August of 2014 to engage in printing materials for use in the pizza business of Fox's Pizza Den and also for sale to any user in need of print or embroidered items.

James Fox, the managing member of Fancy Fox, LLC testified that Fancy Fox, LLC was incorporated on August 17, 2014. He explained that [Appellant] signed the Agreement on January 1, 2015 although they did not begin operations until March of 2015. Mr. Fox testified that he purchased the new equipment in reliance on [Appellant] becoming an employee under the non-compete Agreement. He explained that had [Appellant] not signed that Agreement, he would not have purchased new equipment and would not have expanded operations. T.T. 56-57. He explained that the Agreement prohibited [Appellant] from "operating within all of Westmoreland County and Allegheny County, Pennsylvania, and elsewhere to the extent located within a 25-mile radius of 4425 William Penn Highway, Murraysville, Pennsylvania." Prior to March of 2015, [Appellant] was an independent contractor with Fox Pizza Distribution.

Mr. Fox stated that after termination, [Appellant] started a new business and started soliciting many of Fancy Fox, LLC's customers in July of 2017 including A&L Motors, Joe Bass, John Denning, Jeffrey Stahl and Conoco. T.T. 26-33.

[Appellant] testified that he started managing the business in January of 2014 after the prior manager Rich Grimes left. [Appellant] stated that the machines were already there and new machines were not purchased until July of 2016. T.T. 64-65. [Appellant] stated that when he signed the non-compete Agreement in January of 2015 nothing changed and he did not get a raise. He testified that he signed it as a subcontractor and not an employee of Fancy Fox, LLC. However, he also stated that in 2015, he received both a 1099 form and a W-2 from Fancy Fox, LLC. T.T. 70. [Appellant] testified that machines were being added all the time. T.T. 82. [Appellant] admitted that he began to solicit Fancy Fox, LLC's customers after he was fired in May of 20[1]7. T.T. 86. After he was fired, he immediately began violating the Agreement. Fancy Fox, LLC filed a Complaint seeking injunctive relief and damages.

Trial Court Opinion, 12/8/17, at 1-2.

The parties proceeded to a bench trial on August 28, 2017.  There were two witnesses:  James R. Fox, Jr. (Fox), on behalf of Fancy Fox,[1] and Appellant.  Fox introduced the Agreement Not to Compete (Agreement), dated January 1, 2015, as Exhibit A.  He explained that Fancy Fox was a silk screen and embroidery business, and in 2015, "we separated it from our parent company," Fox's Pizza Distribution, and made "a major investment," including $40,000 in new equipment, "and an office and everything else."  N.T., 8/28/17, at 12-13, 36.[2]  Fox stated:

> We started investing in '15.  We bought new machines.  We bought all kinds of printers and computers and desks.  I mean, carpet.  You name it.  We redid the whole room.  I had to buy air conditioners.

*Id.* at 115.

Fox stated that Appellant "sold shirts to the customers, made the shirts, and pretty much managed the whole operation, so he was pretty much the main guy."  *Id.* at 19.  He stated that the Agreement was created because "we were making a major investment, and [Appellant] had access to all the customers, and he dealt with all the customers."  *Id.* at 13-14.  Fox clarified

---

[1] Fox testified that he and his father are the owners of Fancy Fox.  N.T., 8/28/17, at 37.

[2] Fox described the genesis of Fancy Fox:  "So how it started was we opened the embroidery room to do our own inhouse embroidery silk screen for Fox's Pizza only.  And then it snowballed.  And it got bigger, and it got bigger, and it got bigger.  And then [Appellant] came on board. . . . And, of course, our accountants and our attorneys wanted it separated."  N.T., 8/28/17, at 38-39.

that the intent of the Agreement was that if Appellant left, he would "not take our customers." *Id.* at 14.

As to the parties' history, Fox testified that he hired Appellant in July of 2013 and that Appellant was a 1099 "outside salesman" working for Fox's Pizza Distribution. *Id.* at 50. In 2015, Appellant began working for Fancy Fox as a W-2 employee. Fox would not have expanded the business and hired Appellant as an employee had Appellant not signed the Agreement. *Id.* at 56. The first pay of the new company occurred on March 11, 2015. *Id.* at 54. Appellant earned $800 a week as an employee. *Id.* at 60.

Fox further testified that Fancy Fox terminated Appellant in May of 2017, and thereafter Appellant failed to adhere to the Agreement and began soliciting Fancy Fox's customers. As summarized by the trial court, *supra*, Fox testified that Appellant started a competing business and successfully solicited Fancy Fox's customers. Fox testified that three weeks prior to trial, Fancy Fox's biggest customer, Conoco, "said that they were going to go with [Appellant's] new company." *Id.* at 34; *see also id.* at 33 (Fox testifying that Appellant "did tell my manager of the pizza shop, who is his friend, that he did $40,000 the first month").

Appellant testified that he began working for Fox in July of 2013 as a "commission only" salesman. *Id.* at 63-64. In 2014, he began earning $700 a week as a manager. *Id.* at 64. Appellant testified that he did not receive anything for signing the Agreement in January of 2015, and nothing changed with his employment status. *Id.* at 66. Although in 2015 he received both

1099 and W-2 tax forms, Appellant stated that nothing changed with his work. He said he "never received a paycheck" and that his wife "got every paycheck from the bank." *Id.* at 78. Appellant testified that he was not "hired into any new position" and his "position never changed." *Id.* at 79. He also stated that he "might have just signed [the Agreement] because [Fox] told him me I had to. I don't know." *Id.* at 84. When asked whether he began to solicit clients and customers from Fancy Fox, Appellant responded, "I began to try to provide food for my family, and what I did is the only thing I've known for awhile, and I started to sell shirts again." *Id.* at 86-87.

After hearing the evidence, the trial court stated that it "was not inclined to deny relief today," and indicated it would be finding in favor of Fancy Fox. *Id.* at 119. The court stated that "this is reprehensible conduct" by Appellant, who "starts to steal their people, their customers, and he comes in with no remorse." *Id.* at 119-120. On August 30, 2017, the trial court it issued its order imposing a two-year preliminary injunction restricting Appellant from engaging in competitive business within 20 miles of Fancy Fox, and directing Appellant to provide an accounting of his business and marketing activities to Fancy Fox within 30 days.

Appellant filed a notice of appeal on August 31, 2017.[3] Although it does not appear from the record that the trial court ordered Appellant to comply with Pa.R.A.P. 1925(b), the trial court filed an opinion on December 8, 2017.

---

[3] An order granting a preliminary injunction is immediately appealable. **See** Pa.R.A.P. 311(a)(4).

Appellant presents a single issue for our review:

> Whether an employment agreement containing a restrictive covenant not to compete, entered into after the commencement of employment, is unenforceable for lack of consideration where the employer provided the employee with no benefit or change in employment status at the time of execution.

Appellant's Brief at 7.

We note:

> As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [court].

*Allegheny Anesthesiology Associates, Inc. v. Allegheny General Hosp.*,

826 A.2d 886, 891 (Pa. Super. 2003) (*quoting* *Shanaman v. Yellow Cab Co.*

*of Philadelphia*, 421 A.2d 664, 666 (Pa. 1980)). In addition:

> When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.
> It is inappropriate for an appellate court to make factual determinations in the face of conflicting evidence.

*Nicholas v. Hofmann*, 158 A.3d 675, 688–89 (Pa. Super. 2017) (citations

omitted).

The essence of Appellant's argument is that he "received absolutely no consideration for executing the restrictive covenant that was presented to him by [Fancy Fox]." Appellant's Brief at 12. Although Appellant acknowledges that his "role and responsibilities grew over time," he states that he "received nothing for executing the restrictive covenant" and his $700 weekly pay "never changed." *Id.* at 18-20. Relying primarily on *Socko v. Mid-Atlantic Systems of CPA, Inc.*, 126 A.3d 1266 (Pa. 2015), Appellant asserts that "without new and valuable consideration, a restrictive covenant is unenforceable." *Id.* at 25, *citing Socko*, 126 A.3d at 1275.

> [I]n Pennsylvania, restrictive covenants are enforceable only if they are: (1) ancillary to an employment relationship between an employee and an employer; (2) supported by adequate consideration; (3) the restrictions are reasonably limited in duration and geographic extent; and (4) the restrictions are designed to protect the legitimate interests of the employer.

*Socko v. Mid–Atlantic Systems of CPA, Inc.*, 126 A.3d 1266, 1274 (Pa. 2015) (citations omitted).

Appellant focuses on the second prong of *Socko*, which requires that a restrictive covenant be supported by adequate consideration. First, we note that the Agreement expressly states that there was adequate consideration for Appellant's agreement not to compete for a two-year period. The Agreement provides:

> WHEREAS, it is intended that [Appellant] will be a key employee of Fancy Fox with access to confidential information and strategies employed in the development of the business of Fancy Fox.

WHEREAS, the agreement is supported by independent and sufficient consideration, including the protection of vital business interests, as an Incident of Employment, and to induce Employer to employ Employee in the contemplated position . . .

Agreement, 1/1/15, at ¶¶ 3, 4.

Further, the trial court – relying on **Socko** – reasoned:

I find that [Appellant] breached his obligations under the contract with Fancy Fox and Fancy Fox will continue to suffer damages as a result. The non-compete Agreement is valid and enforceable under **Socko v. Mid-Atlantic Systems of CPA, Inc.**, 126 A.3d 1266 (Pa. 2015). In that case, the Court considered whether a non-compete agreement was supported by sufficient consideration. "Without new and valuable consideration, a restrictive covenant is unenforceable." **Maintenance Specialties Inc. v. Gottus**, 314 A.2d 279, 281 (Pa. 1974). In **Socko**, the court noted that "[i]f a noncompetition clause is executed at the inception of the employment, the consideration to support the covenant may be the award of the position itself." **Id.** at 1275. I find that [Appellant]'s employment in 2014 was as a subcontractor with Fox Distribution. He became a salaried employee in 2015 when he was hired by a separate and distinct entity to manage Fancy Fox, LLC. That new job constitutes sufficient consideration under **Socko** for the non-complete.

Trial Court Opinion, 12/8/17, at 3.

For context, we reference the Supreme Court's discussion of **Socko**

pertinent to our analysis as follows:

As with other contracts, for an employment agreement containing a restrictive covenant to be enforced, consideration is crucial, whether the covenant is entered into prior to, during, or after employment ends. Thus, to be valid, a covenant not to compete must be consummated with the exchange of consideration. **Capital Bakers Inc. v. Townsend**, 426 Pa. 188, 231 A.2d 292, 293–94 (1967) (restrictive covenant in employment contract executed 12 years after the start of employment was unenforceable for lack of consideration). If a noncompetition clause is executed at the inception of the employment, the consideration to support the covenant may be

the award of the position itself. ***Barb–Lee Mobile Frame Co. v. Hoot****,* 416 Pa. 222, 206 A.2d 59, 61 (1965); ***Morgan's*** [***Home Equip. Corp. v. Martucci***]*,* 136 A.2d [838,] 845 [(Pa. 1957)] (holding covenant not to compete may be enforceable if contained in an employment agreement executed upon the "taking of employment"). However, a restrictive covenant is not required to be included in the initial employment contract to be valid. ***Jacobson & Co. v. Int'l. Environment Corp.****,* 427 Pa. 439, 235 A.2d 612, 618 (1967); *see generally* Jordan Liebman and Richard Nathan, *The Enforceability of Post–Employment Noncompetition Agreements Formed After At–Will Employment Has Commenced: The "Afterthought" Agreement,* 60 S. Cal. L.Rev. 1465 (1987). There are legitimate reasons for this, including the development of a worker's expertise, but only after employment for a period of time:

> [I]n many instances, ... the insertion of a restrictive covenant in the original contract would serve no valid purpose. An employer who hires a novice has no desire to restrict his present competitive force. Only when the novice has developed a certain expertise, which could possibly injure the employer if unleashed competitively, will the employer begin to think in terms of the protection of a restrictive covenant.

***Jacobson & Co.****,* 235 A.2d at 618.

When a non-competition clause is required after an employee has commenced his or her employment, it is enforceable only if the employee receives "new" and valuable consideration—that is, some corresponding benefit or a favorable change in employment status. ***See Pulse Technologies, Inc.*** [***v. Notaro***]*,* 67 A.3d [778], 781–82 [(Pa. 2013)]. Sufficient new and valuable consideration has been found by our courts to include, *inter alia,* a promotion, a change from part-time to full-time employment, or even a change to a compensation package of bonuses, insurance benefits, and severance benefits. Without new and valuable consideration, a restrictive covenant is unenforceable. ***Maintenance Specialties Inc. v. Gottus****,* 455 Pa. 327, 314 A.2d 279, 281 (1974). More specifically, the mere continuation of the employment relationship at the time of entering into the restrictive covenant is insufficient to serve as consideration for the new covenant, despite it being an at-will relationship terminable by either party. ***Pulse Technologies, Inc.****; **George W. Kistler, Inc. v. O'Brien***, 464 Pa. 475, 347 A.2d 311, 316 (1975) (plurality).

In sum, while at common law, covenants in restraint of trade have long been disfavored by Pennsylvania courts, an agreement containing a non-compete clause will be upheld, if, among other considerations, it is supported by adequate consideration. In the context of requiring an employee to agree to a restrictive covenant mid-employment, however, such a restraint on trade will be enforceable only if new and valuable consideration, beyond mere continued employment, is provided and is sufficient to support the restrictive clause.

*Socko v. Mid-Atl. Sys. of CPA, Inc.*, 126 A.3d 1266, 1274–76 (Pa. 2015) (footnotes omitted).

Given the foregoing, and consonant with *Socko*, we find no basis to disturb the trial court's finding that Appellant's "new job", *i.e.*, his transition from a 1099 contractor to a W-2 employee with Fancy Fox, constituted sufficient consideration. We further recognize the "favorable change in employment status" as described by Fancy Fox. *See* Fancy Fox's Brief at 19 (noting that Appellant's compensation of $700 per week as an independent contractor increased to $800 per week as a W-2 employee, as well as Appellant's economic benefit as a W-2 employee no longer responsible for self-employment taxes incurred as a 1099 contractor). Fancy Fox calculated the total value and financial benefit to Appellant to be almost $8,000, or a 22% increase in compensation. *Id.* The record confirms these calculations: Fox testified that Fancy Fox paid Appellant $800 per week when he became "a normal employee"; Appellant testified that he was "commission only" until January of 2014, and then paid $700 per week when he became a manager in 2014. N.T., 8/28/17, at 60, 63-64. Appellant did not testify to his

- 10 -

compensation as a W-2 employee in 2015. Although Appellant conceded that he received both a 1099 and W-2 tax form for 2015, he claimed to have "never received a paycheck" and that his wife "got every paycheck from the bank." *Id.* at 78.

In view of the record before us, which supports the factual findings of the trial court, as well as the prevailing legal authority as stated in *Socko*, *supra*, we find no abuse of discretion by the trial court. Thus, we affirm the trial court's order of August 30, 2017.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2018

- 11 -