J-A07020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THERAPY SOURCE, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLLEEN LIDSTONE, ALICE | : | |
| FORSYTHE, AND OPENING DOORS | : | |
| THERAPY, INC. | : | No. 2431 EDA 2018 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered August 20, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): No. 2018-00065

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 28, 2019**

Appellants, Colleen Lidstone, Alice Forsythe, and Opening Doors

Therapy, Inc., appeal from the August 20, 2018 Order entered in the

Montgomery County Court of Common Pleas granting a Preliminary Injunction

in favor of Appellee, Therapy Source, Inc.  After careful review, we affirm.[1]

In 2001, Stacey and Joshua Cartagenova founded Appellee, a

Montgomery County-based business that provides therapy-staffing personnel

_____

[1] On February 6, 2019, Appellants' counsel filed an Application to Withdraw as
Counsel, the disposition of which this Court deferred pending disposition of
this appeal.  Subsequently, counsel filed a Notice of Substitution of Counsel
and *Praecipe* for Withdrawal of Appearance.  We, thus, deny counsel's
Application to Withdraw as moot.

_____

*   Former Justice specially assigned to the Superior Court.

to educational institutions of all kinds around the United States.[2] Appellee works almost exclusively by using a computer database to match customer school districts with therapists.[3] Appellee employs a dedicated marketing group that keeps the database updated.

Appellee hired Forsythe in 2005, and Lidstone in 2010, in Appellee's sales department, and provided them with extensive training. At the time Appellee hired them, both Forsythe and Lidstone signed employment agreements with non-disclosure and non-compete provisions.

In 2016, Appellee gave Lidstone and Forsythe new positions and compensation packages. Both signed new employment agreements that included non-disclosure, non-solicitation, and non-compete provisions.

In the summer of 2017, Lidstone and Forsythe left their jobs with Appellee and began a new business, Opening Doors Therapy. Opening Doors Therapy provides the same educational staffing services as Appellee.

Appellee learned that Appellants had started a business in direct competition with it. Thus, on January 2, 2018, Appellee commenced this

---

[2] Therapy-staffing personnel includes speech, physical, and occupational therapists; psychologists; behavioralists; and other providers of early intervention. *See* N.T., 3/13/18, 5. Therapy Source has approximately 600,000 therapists in its database, operates in 40 states, employs approximately 55 people, and has approximately 360 customers. *Id.* at 6, 8, 10.

[3] Joshua Cartagenova described the Therapy Source database as "the value of our entire company" and "one of the most important parts of our entire business" because it contains "a combination of about 630,000 therapists [and] maybe about 10,000 or so clients." N.T., 3/13/18, at 11-12.

lawsuit by filing a Complaint seeking injunctive relief against Appellants and raising claims of Civil Conspiracy, Tortious Interference with Existing and Prospective Business Relationships, Common Law Unfair Competition, Breach of Contract, and Misappropriation and Misuse of Property against Lidstone and Forsythe individually.

On January 19, 2018, Appellee filed a Petition for a Preliminary Injunction. The trial court held hearings on the Petition on March 13, 2018, and July 24, 2018, at which Appellee presented the testimony of Joshua Cartagenova; Mark Costello, Appellee's director of finance and operations; Edgar Brian Harris, a forensic examiner who collected and examined Appellants' computer hard drive;[4] and Appellants Lidstone and Forsythe as on cross. Lidstone and Forsythe acknowledged that they had non-compete clauses in their employment agreements. Appellants' counsel cross-examined each witness, with the exception of Appellants themselves.

At the close of Appellee's case, Appellants' counsel made an oral Motion for a "demurrer" on the Petition for Preliminary Injunction and presented lengthy argument in support of the Motion. N.T., 7/24/18, at 115-132. The court took the Motion under advisement and ordered the parties to submit memoranda in support of their relative positions. *Id.* at 137-38. Appellants' counsel requested that the court schedule another hearing date for Appellants

_____

[4] The court qualified Mr. Harris as an expert witness in the field of computer forensics and forensic analysis.

to present their case in the event that the court denied their Motion for a "demurrer."[5] *Id.* at 138. The court indicated that it would decide Appellants' request after reviewing the parties' post-hearing memoranda. *Id.*

On August 20, 2018, the court granted Appellee's Petition for a Preliminary Injunction. The following day, Appellants filed a Notice of Appeal from that Order.[6]

On August 21, 2018, Appellants filed an Emergency Motion for Stay Pending Appeal, which the trial court denied on August 23, 2018. In that Order, the court also directed Appellants to "post bond in the amount of $500." Order, 8/23/18.[7, 8] The trial court docket reflects, and the parties agree, that Appellee placed $500 in escrow the next day.

Appellants raise the following three issues on appeal, which we have reordered for ease of disposition:

---

[5] Appellants' counsel conceded that Appellees bore the burden of proof with respect to the Preliminary Injunction and that, therefore, "it isn't necessarily necessary" for Appellants' counsel to question Lidstone and Forsythe, even though Appellee had called them as on cross. N.T., 7/24/18, at 140.

[6] Both Appellants and the trial court complied with Pa.R.A.P. 1925.

[7] The trial court has acknowledged that it mistakenly required the "defendants" to post a bond. It is clear to this Court, as it was to the parties, that the trial court intended to direct the "plaintiff" to post a bond and the "plaintiff"—Appellee—did so on August 24, 2018.

[8] Appellants also filed an appeal from the court's August 23, 2018 Order denying their Emergency Motion for Stay Pending Appeal. *See Therapy Source, Inc. v. Colleen Lidstone, Alice M. Forsythe, and Opening Doors Therapy, Inc.*, No. 2965 EDA 2018.

1. Whether the trial court committed reversible error by failing to require [Appellee] to post a bond as a condition of obtaining a preliminary injunction?

2. Whether the trial court abused its discretion by finding [Appellee] proved it satisfied all six essential prerequisites for injunctive relief and effectively denied [Appellants'] Motion for Demurrer (Nonsuit), particularly where [Appellee] failed to introduce into evidence the contracts it sought to enforce?

3. Whether the trial court committed reversible error and/or violated [Appellants'] due process rights by refusing to allow [Appellants] to present its case-in-chief in opposition to [Appellee's] Petition for Preliminary Injunction after agreeing [that Appellants] could preserve witness examination and the presentation of its evidence until that point of the hearing and then granting [Appellee's] Petition based upon an incomplete record?

Appellants' Brief at 3-4.

**Requirement to Post a Bond**

In their first issue, Appellants claim that this Court must vacate the August 20, 2018 Order granting Appellee's Petition for a Preliminary Injunction because the trial court failed to order Appellee to file a bond pursuant to Pa.R.C.P. 1531(b). Appellants' Brief at 17-19. Appellants argue that the court committed reversible error when it granted the Preliminary Injunction without requiring a bond, and that this failure "cannot be corrected or cured after an appeal has been made to this [C]ourt." *Id.* at 17-19 (quoting ***Rose Unifs., Inc. v. Lobel***, 184 A.2d 261, 263 (Pa. 1962)).

Pa.R.C.P. 1531(b) provides, in relevant part, that, when granting a preliminary injunction, the court must order the movant to file a bond. ***See*** Pa.R.C.P. 1531(b)(1). The statutory requirement that a plaintiff seeking a permanent injunction post a bond is, therefore, mandatory and this Court

"must invalidate a preliminary injunction if a bond is not filed by the plaintiff." ***Walter v. Stacy***, 837 A.2d 1205, 1208 (Pa. Super. 2003) (quoting ***Soja v. Factoryville Sportsmen's Club***, 522 A.2d 1129, 1131 (Pa. Super. 1987)). However, the trial court can cure this defect caused by failing to order a bond by reissuing the preliminary injunction with a bond requirement. ***Walter***, 837 A.2d at 1208.[9]

Both Rule 1531 and this Court in ***Walter*** make it clear that it is mandatory that a plaintiff in whose favor the court has granted a preliminary injunction post a bond. Although in the instant case the August 20, 2018 Order granting Appellee a Preliminary Injunction did not include a directive that Appellee post a bond, three days later the court issued a separate Order directing Appellee to post a $500 bond. Appellee posted the required bond the next day. Thus, we conclude that Appellee and the court have complied with Rule 1531 and Appellants are not entitled to relief on this claim.[10]

_____

[9] Significantly, Rule 1531 does not specify that the same order that grants the preliminary injunction contain the directive that the plaintiff post a bond. Rather, the plain language of the Rule requires only that "a preliminary or special injunction shall be granted only if … the plaintiff files a bond in an amount fixed by the court . . . ." Pa.R.C.P. 1531(b)(1).

[10] Moreover, even if we were to conclude that the court's failure to include in a provision requiring Appellee to post a bond invalidated the August 20, 2018 Order, we would, in the interest of judicial economy decline to grant Appellants relief as the trial court's August 23, 2018 Order cured this defect by requiring Appellee to post a bond and Appellee has complied with that Order.

**Preliminary Injunction**

Next, Appellants assert that the trial court abused its discretion in finding that Appellee proved each of the six essential prerequisites for a preliminary injunction. Appellants' Brief at 19-28. In particular, Appellants complain that the court erred by relying on documents—Lidstone's and Forsythe's 2016 employment agreements—and facts allegedly not in evidence. *Id.* at 21-22.[11]

The following principles guide our review of an order granting injunctive relief: "The standard of review applicable to preliminary injunction matters ... is highly deferential. This highly deferential standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Duquesne Light Co. v. Longue Vue Club*, 63 A.3d 270, 275 (Pa. Super. 2013) (citation and internal quotation marks omitted).

A party must establish the following six "essential prerequisites" to obtain injunctive relief:

_____

[11] In the alternative, they contend that the non-compete provisions of Lidstone's and Forsythe's employment agreements were not enforceable because the provisions were not supported by adequate consideration and are geographically unreasonable as a matter of law. Appellants' Brief at 22-28. This argument pertains to the merits of the underlying controversy, which is beyond the scope of our review of the decision granting the preliminary injunction. *Santoro v. Morse*, 781 A.2d 1220, 1225 (Pa. Super. 2001).

1. that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

2. that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings;

3. that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

4. that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits;

5. that the injunction it seeks is reasonably suited to abate the offending activity; and

6. that a preliminary injunction will not adversely affect the public interest.

*Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. 2004). A trial court has "apparently reasonable grounds" for its denial of injunctive relief where it finds that the petitioner has not satisfied any one of the "essential prerequisites." *Id.* at 46.

"We will interfere with the trial court's decisions regarding a preliminary injunction only if there exist no grounds in the record to support the decree, or the rule of law relied upon was palpably erroneous or misapplied. It must be stressed that our review of a decision regarding a preliminary injunction does not reach the merits of the controversy." *Santoro v. Morse*, 781 A.2d 1220, 1225 (Pa. Super. 2001) (citations omitted).

After a careful review of the parties' arguments and the record, we conclude that the trial court did not abuse its discretion in granting a

Preliminary Injunction in favor of Appellee, and we adopt the comprehensive Opinion of the Honorable Arthur S. Tilson as to this issue as our own. ***See*** Trial Ct. Op., 10/2/18, at 7-14 (concluding that Appellee had established each of the six essential prerequisites to obtaining injunctive relief).[12]

**Due Process Challenge**

In their third issue, Appellants allege, relying on ***Pubusky v. D.M.F. Inc.***, 239 A.2d 335 (Pa. 1968), that the trial court violated their due process rights by refusing to allow them to present any evidence at the preliminary injunction hearing. Appellants' Brief at 12.

The burden of proving each of the essential prerequisites for the imposition of a preliminary injunction is on the moving party. ***Warehime***, 860 A.2d at 47. In this case, Appellee was the moving party.

Appellants' reliance on ***Pubusky*** is unavailing. In ***Pubusky***, *supra*, the trial court initiated a hearing on a requested preliminary injunction. Interrupting defendant's cross-examination of plaintiff and preventing defendant from presenting any evidence or testimony on his own behalf, the lower court discontinued the hearing and granted plaintiff a preliminary injunction. Our Supreme Court vacated the decree and remanded the case

---

[12] Insofar as Appellants claim they are entitled to relief because the Lidstone's and Forsythe's 2016 employment agreements were not part of the factual record, we find this claim waived as Appellants did not raise this issue before the trial court either by making a timely objection at the hearing or in their Rule 1925(b) Statement. ***See*** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

for an evidentiary hearing after concluding that "[i]t ... is fundamental that all of the parties are entitled to a hearing before [a preliminary] injunction should issue." ***Pubusky***, 239 A.2d at 336–37. The Supreme Court in ***Pubusky*** also explained that "a preliminary injunction should not issue at least until the rights of the plaintiff are clearly established." ***Id.*** at 336. This includes protecting the rights of litigants "to fully cross-examine all **adverse** witnesses" and to present relevant testimony. ***Id.*** at 337 (emphasis added).

In the instant case, Appellee—the moving party—called numerous witnesses including both Lidstone and Forsythe as on cross, each of whom provided lengthy testimony. Importantly, Appellants' counsel cross-examined each of the witnesses with the exception of Appellants[13] and moved exhibits into evidence. Then, at the close of Appellee's case-in-chief, rather than present Appellants' case, Appellants' counsel moved for a "demurrer." N.T., 3/13/18, at 114-115. In support of the Motion, Appellants' counsel noted that "there's a litany of cases that talk about the fact of even having a hearing on a preliminary injunction is actually discretionary with the court" and argued that she thought the court had enough information before it to determine whether Appellee had proven the elements required to obtain a preliminary injunction. ***Id.*** at 115.

---

[13] At the conclusion of Lidstone's testimony, her counsel declined the opportunity to question Lidstone and indicated that he "would prefer to do that in my case." N.T., 3/13/18, at 182. Rather than question Forsythe, counsel informed the court that she would reserve her questions for the defense case. N.T. 7/24/18, at 32.

After hearing extensive argument from both parties, the court indicated it would take Appellants' Motion for a "demurrer" under advisement and consider it along with the evidence and the parties' post-hearing memoranda, in which the court indicated the parties should articulate what they think they had "proved and why [the court] should go forward either way[.]" N.T., 7/24/18, at 138.

Then, even though Appellants' counsel had previously admitted to the court that she believed the court had all of the evidence it needed to make a decision on the merits of the preliminary injunction, counsel nonetheless informed the court that she was concerned that the court would be making a decision without having heard the defense case. *Id.* She requested that, if the court was not inclined to grant Appellants' Motion for "demurrer," the court permit Appellants to present their case against the imposition of the Preliminary Injunction. *Id.* The court indicated that it would decide whether to bring the parties back for further testimony after it reviewed the parties' memoranda. *Id.* Appellants' counsel again reminded the court that counsel had not presented Appellants' case and had not questioned either Appellant when Appellee had called them as on cross. *Id.* at 140. Relevantly, the court and Appellants' counsel agreed that questioning Appellants was not "necessarily necessary" because Appellee bore the burden of proof on the issue of the Injunction. *Id.*

In addressing Appellants' argument that the court denied them their right to due process at the preliminary injunction hearing, the trial court opined as follows:

> This court held two days of hearings on [Appellee's] Petition. [Appellants'] counsel cross[-]examined [Appellee's] witnesses. Forsythe and Lidstone testified at length, and presented their view of the evidence in their testimony. The evidence was clear, and was in fact admitted to by Forsythe and Lidstone, that their employment agreements contained, *inter alia*, non-compete, non-solicitation[,] and non-disclosure restrictions. Evidence was presented, and acknowledged by Forsythe and Lidstone in their testimony at the hearings, that they had contacted former customers and hired former employees of [Appellee]. Post[-]hearing briefs were submitted by both parties. . . . While [Appellants] may have additional evidence to present in defense of the breach of contract and other claims in the [C]omplaint in this case, the right to and need for a preliminary injunction was clearly shown. The relief requested was needed timely and no further testimony was required to show this need.

Trial Ct. Op., 10/2/18, at 14-15 (footnotes omitted).

Contrary to Appellants' claim, we conclude that the court afforded Appellants the opportunity to, and Appellants did, in fact, cross-examine the adverse witnesses and introduce relevant evidence. Rather than present their own case-in-chief, however, Appellants moved for a "demurrer" and conceded that: (1) Appellee had the burden of proof, and (2) that the court had enough information before it to make a determination on the merits of the preliminary injunction. Appellants, thus, availed themselves of due process. Consequently, we conclude that the court did not deprive Appellants of their due process rights. Their claim, thus, warrants no relief.

Order affirmed.  Appellants' counsel's Application to Withdraw is denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/19

Case# 2018-00065-65 Docketed at Montgomery County Prothonotary on 10/02/2018 2:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA CIVIL DIVISION

| | | |
|---|---|---|
| **THERAPY SOURCE, INC.** | : | **Superior Ct. No. 2431 EDA 2018** |
| | : | |
| **Plaintiff** | : | **Comm. Pl. Ct. No. 2018-00065** |
| **v.** | : | |
| | : | |
| | : | |
| **COLLEN LIDSTONE,** | : | |
| **ALICE M. FORSYTHE and** | : | |
| **OPENING DOORS THERAPY, INC.** | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

### OPINION

**Tilson, S.J.**                                                                    **October 2, 2018**

### I.     INTRODUCTION

Plaintiff/Appellee, Therapy Source, Inc. (hereinafter "Therapy Source" is a company which, since 2001, has been providing school therapy staffing personnel to educational institutions. Defendants/Appellees, Colleen Lidstone (hereinafter "Lidstone") and Alice M. Forsythe (hereinafter "Forsythe") were employed by Therapy Source for eight years and thirteen years, respectively. Both Lidstone and Forsthye signed Employment Agreements with Therapy Source which included Non-Disclosure, Non-Solicitation and Non-Competition Agreements. Lidstone and Forsythe left their jobs in the summer of 2017. In December of 2017, Therapy Source learned that Lidstone and Forsythe had begun a new business, Opening Doors Therapy, which provides the same educational staffing services as Therapy Source.

Upon learning that Lidstone and Forsythe were, through their new company, allegedly violating the terms of their employment agreements, Therapy Source filed this lawsuit on January 2, 2018. On January 19, 2018, Therapy Source filed a Petition for a Preliminary Injunction. Two days of hearings were held concerning this Petition. At the conclusion of the hearings, based upon the evidence, including testimony by Lidstone and Forsythe, and exhibits, including the Employment Contracts that were presented at that hearing, this Court entered an Order granting a Preliminary Injunction on August 20, 2018. Lidstone, Forsythe and Opening Doors timely appealed this Order.

## II. FACTS AND PROCEDURAL HISTORY

Therapy Source, located in Montgomery County, Pennsylvania was founded in 2001 by Joshua and Stacey Cartagenova to provide a "full spectrum" of on-line therapy staffing services to schools and early childhood interventional providers. The positions Therapy Source helps to fill include speech pathologists, behavioral, occupational and physical therapists, audiologists and social workers. The work is done almost exclusively by using a computer database of customers and therapists. Therapy Source hired Forsythe in 2005 and Lidstone in 2010. Neither had any experience in the therapy staffing field when they were hired, and both received extensive training by Therapy Source. When they were hired, both Forsythe and Lidstone signed employment agreements with non-disclosure and non-compete provisions.

In 2016, both Lidstone and Forsythe were given new compensation packages which provided for larger bases on which they would receive commissions. Each of their annual compensation increased under the new plan. *See* Notes of Testimony, March 13, 2018 hearing, (hereinafter "N.T. 3/13/18") at 188-189. At that time both, Lidstone and

2

Forsythe each signed new Employment Agreements that again included non-disclosure, non-solicitation and non-compete restrictions. The non-disclosure provisions define "Confidential Information" as "information and knowledge pertaining to customers, contractors, products, services, inventions, discoveries, improvements, innovations, designs, ideas, trade secrets, proprietary information, advertising, marketing unique business strategies, sales methods, sales and profit figures, customer and client lists, forms, contracts invoices, databases, spreadsheets and information regarding the needs of and relations" between Therapy Source and its customers. In signing their Employment Agreement, Lidstone and Forsythe acknowledged that:

> that the Confidential Information is a valuable and unique asset of the Company and covenants that, during the Employee's employment by the Company and for a period of two (2) years thereafter, Employee will not, directly or indirectly, use the Confidential Information for Employee's own purposes, or directly or indirectly disclose the Confidential Information to any person, firm or corporation …except as Employee's duties on behalf of the Company may require; provided that such obligation of confidentiality shall continue beyond the foregoing two (2) year limitation to the extent the Confidential Information is a trade secret under Pennsylvania law….

The Employment Agreement further included the following "Non-Solicitation and Non-Competition" provisions:

> [d]uring the Employee's employment by the Company and for a period of two (2) years thereafter, ("Restrictive Period") the Employee shall not, unless acting pursuant to the terms of this Agreement, or with prior written consent of the Company's owners, solicit directly or indirectly or divert Customers, as defined below, or Potential customers, as defined below to become a customer of a competitor of the Company….
>
> During the Employee's employment by the Company and during the Restrictive Period, the Employee shall not, directly or indirectly, employ, hire, attempt to employ, solicit or assist any other person in employing, hiring, soliciting or attempt to employ or hire any current or former employee or contractor of the Company….

3

Case# 2018-00065-65 Docketed at Montgomery County Prothonotary on 10/02/2018 2:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(d) For so long as Employee is employed by the Company, and for a period of two (2) years after termination of such employment... Employee shall not directly or indirectly anywhere in the states that the Company conducts business, (i)enter into the employ of...any person, firm or corporation engaged in the sale or provision of the same or similar services, provided during the term of Employee's employment by the Company....or (ii) engage in any business in competition with the Company on the Employee's own account, or become interested in any such business directly or indirectly, as an individual, partner, shareholder, director, officer, principal, agent employee, trustee, contractor, consultant....

(e) In addition, the Employee that, upon termination of the Employee's employment, the Employee agrees to return any and all customer lists to the Employer and shall not during the terms of the Employee's employment or any time thereafter, directly or indirectly use the Company's customer service list for the Employee's benefit....

The Employment Agreements signed by Lidstone and Forsythe contain provisions in which they acknowledge Therapy Source's right to injunctive relief in the event of a breach.

The evidence shows that Therapy Source and Open Door Therapy, Lidstone and Forsythe's new company, compete for the same business online throughout the United States. Further the evidence shows that, and indeed Lidstone and Forsythe testified that after they started Open Door Therapy, they contacted customers of Therapy Source. Further both Lidstone and Forsythe testified that their Open Door currently has contracts with and are placing contractors with customers with whom they worked while at Therapy Source. Former employees of Therapy Source were hired to work for Open Door Therapy.

4

Evidence was presented that appears to show that documents of Therapy Source were copied by Lidstone shortly before she left to start the new company.[1]

At the hearing, Lidstone testified that she started her company, Opening Doors, in November of 2017. She admitted that Opening Doors was in the same line of business as Therapy Source and that Opening Doors has "attempted to work with customers of Therapy Source" and that she had "reached out to some of these customers herself. She further testified that these were customers for which she had responsibility when she worked at Therapy Source. She attempted to do business with customers of Therapy Source in South Carolina, Texas, Ohio, and Michigan. Opening Doors is doing business with a former Therapy Source customer with whom Forsythe and Lidstone worked at Therapy Source in Pennsylvania.[2] N.T. 3/13/18" at 136-142.

Forsythe likewise testified that Opening Doors was a direct competitor of Therapy Source, and that she has attempted to do business with customers of Therapy Source, and in fact has a contract with at least one such customer for whom she was responsible at Therapy Source. N.T 3/13/18 at 208-211. She testified that Open Doors entered into a contract with a company, with which she had worked for twelve years, while at Therapy Source, Commonwealth Charter, **after** the instant lawsuit and the petition for a preliminary injunction were filed, indeed **after** the first hearing on the petition was filed.

---

[1] Evidence including expert testimony was presented by Therapy Source in an attempt to prove that Lidstone copied Therapy Source documents shortly before her resignation from Therapy Source. While this court finds this testimony credible as to the confidential information, any such evidence is not main the basis for this court's order. The court does find that Lidstone and Forsythe violated and are violating other terms of their employment agreements. The court is merely requiring that Lidstone and Forsythe comply with their contractual agreement not to use or disclose their former employer's confidential documents or information.

[2] Lidstone said she was not attempting to do business with any additional former Therapy Source customers in states other than those five "at the moment."

5

Notes of Testimony of hearing on July 24, 2018 (hereinafter July N.T.) at 19-23. She also communicated with therapists with whom she and Lidstone had worked at Therapy Source. N.T. at 218-219.

After considering the evidence presented at two days of hearings, this court granted Therapy Source's Petition for a Preliminary Injunction.

The Order entered by this Court on August 20, 2018 provides that:

1. Alice M. Forsythe and Opening Doors Therapy, Inc. are hereby enjoined from engaging in or conducting the following activities for a period of two years from September 15, 2017 in any state in which Therapy Source operates.

   a) Engaging in business or providing services to any person or entity which provides therapy staffing solutions to schools, educational institutions or early intervention services providers.

   b) Soliciting the business of any customer or prospective customer, contractor or prospective contractor to breach or terminate their business with Lidstone and Forsythe.

   c) Directly or indirectly hire or assist any other person or entity in hiring any current or former employee of Lidstone and Forsythe, Inc. who has or had access to Confidential Information as defined in the employment agreement signed by Alice M. Forsythe.

2. Colleen Lidstone and Opening Doors Therapy, Inc. are hereby enjoined from engaging in or conducting the following activities for a period of two years from August 18, 2017 in any state in which operates.

   a) Engaging in business or providing services to any person or entity which provides therapy staffing solutions to schools, educational institutions or early intervention services providers.

   b) Soliciting the business of any customer or prospective customer, contractor or prospective contractor to breach or terminate their business with Lidstone and Forsythe.

6

c) Directly or indirectly hire or assist any other person or entity in hiring any current or former employee of Lidstone and Forsythe, Inc. who has or had access to Confidential Information as defined in the employment agreement signed by Colleen Lidstone.

Lidstone, Forsythe and Opening Doors sought a stay of the Order granting the injunction, which was denied by this court. This Order was amended to require Therapy Source to post bond. The Superior Court also denied a motion to stay the injunction entered pending appeal.[3]

## III.    DISCUSSION

The standard of review for a trial court's decision to issue a preliminary injunction is as follows:

> on an appeal from the grant or denial of a preliminary injunction, [the appellate court will] not inquire into the merits of the controversy, but only examine the record to determine if there were *any apparently reasonable grounds* for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will [the appellate court] interfere with the decision of the trial court.

*Jarl Investments, L.P. v. Fleck*, 937 A.2d 1113, 1125 (Pa. Super. Ct. 2007) quoting *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 646, 828 A.2d 995, 1000 (2003) (quoting *Roberts v. Board of Dirs. of Sch. Dist.*, 341 A.2d 475, 478 (1975)). As explained by the Supreme Court in *Hess v. Gebhard & Co. Inc.*, 808 A.2d 912, 920 (Pa. 2002):

> [t]he function of this Court on an appeal from an adjudication in equity is not to substitute its view for that of the lower tribunal; our task is rather to determine whether "a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal." *Aiken Indus., Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808, 810 (1978), *cert. denied*, 439 U.S. 877, 99 S. Ct. 216, 58 L.Ed.2d 191 (1978)

---

[3] On September 24, 2018, Lidstone, Forsythe and Opening Doors filed an appeal of the Order entered on August 23, 2018 denying the stay and requiring bond to be posted.

7

(quoting *Masciantonio Will,* 392 Pa. 362, 141 A.2d 362, 365 (1958)). As this appeal raises only an issue of law, our review is plenary. *Commonwealth v. Kelley,* 801 A.2d 551 (Pa.2002).

To obtain a preliminary injunction, a party must show (1) that it is likely to prevail on the merits; (2) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (3) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; (4) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (5) that the injunction it seeks is reasonably suited to abate the offending activity; and (6) that a preliminary injunction will not adversely affect the public interest. *See Iron Age Corp. v. Dvorak,* 880 A.2d 657, 662 (Pa. Super. 2005), *citing Wareham v. Warehime,* 860 A.2d 41, (Pa. 2004).

Equity may enforce a restrictive covenant by entry of a preliminary injunction when the covenant when it is reasonably necessary to the protection of the employer, is incident to the employment relationship, supported by consideration, and when it is reasonably limited in duration and geographic extent. *Sidco Paper Company v. Aaron,* 351 A.2d 250, 252 (1976). Employees who are trying to avoid restrictive covenants bear the burden of proving that the restriction is unreasonable. *See John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.,* 369 A.2d 1164, 1169-70 (Pa. 1977). In *Insulation Corp. of America v. Brobston,* 446 Pa. Super. 520, 534 667 A3d 729, 735 (1995), the court noted that "it bears noting that there is a significant factual distinction between the

8

hardship imposed by the enforcement of a restrictive covenant on an employee who voluntarily leaves his employer and that imposed upon an employee who is terminated for failing to do his job."

When a non-competition clause is signed after an employee has commenced her employment, the covenant is enforceable only if the employee receives "new and valuable consideration—that is, some corresponding benefit or a favorable change in employment status." *Socko v. mid- Atlantic Systems of CPA, Inc.,* 633 Pa. 555, 126 A. 3d 1266, 1275. In *Socko,* the court noted, "[s]ufficient new and valuable consideration has been found by our courts to include, *inter alia,* a promotion or a change to a compensation package."

Among the interests to be protected by restrictive covenants is customer good will, defined as "that which 'represents a preexisting relationship arising from a continuous course of business." *Zambelli Fireworks Mfg. Co. v. Wood,* 592 F.3d 412, 424 (3d Cir.2010) (quoting *Butler v. Butler,* 541 Pa. 364, 663 A.2d 148, 152 n. 9 (Pa.1995)). Restrictive covenants "have developed into important business tools to allow employers to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them." *Hess v. Gebhard & Co.,* 570 Pa. 148, 808 A2d 912, 917 (2001). Interference with existing customer relationships constitutes irreparable harm. *See Sheridan Broad Networks, Inc. v. NBN Broad, Inc., 693 A2 989, 995* (Pa. Super. 1997). This harm results in damages that are difficult to calculate and may not be adequately compensated by money damages. In *Courier Times, Inc. v. United Feature Syndicate, Inc.,* 300 Pa. Super. 40, 445 A.2d 1288 (1982) the court noted that interference with business relationships constituted irreparable

9

Case# 2018-00065-65 Docketed at Montgomery County Prothonotary on 10/02/2018 2:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

harm, noting that it "is virtually impossible to value the impending loss of business opportunities or market advantages resulting such interference."

Non-compete restrictions for two years are routinely upheld as reasonable in Pennsylvania. *See Worldwide Auditing Serv's, Inc. v. Richter*, 587 A.2d 772 (Pa. Super. Ct. 1991) (upholding two-year restriction); *see also John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164 (Pa. 1977) (upholding three-year restriction).

In this case, Therapy Source has established its right to enforcement of the restrictive covenants to which Lidstone and Forsythe agreed to be bound. Therapy Source is likely to succeed in its claim against Lidstone and Forsythe for breach of his agreement because the non-compete agreement is valid and enforceable. Lidstone and Forsythe signed the agreements as part of a restructuring of their compensation packages.[4] Lidstone and Forsythe admitted in their testimony and pleadings that they aware of the agreements and the requirements therein and that it was a condition of their employment. Lidstone and Forsythe breached their obligations under their respective agreements by their work for the company they started Open Doors Therapy, which is, they admit, a competitor of Therapy Source.

The evidence in this case, including Lidstone and Forsythe's own testimony, shows that the covenants which are at issue were incident to Lidstone and Forsythe's employment with Therapy Source. Lidstone and Forsythe clearly executed the new employment agreements at issue when provided with a new

---

[4] Lidstone and Forsythe had also signed employment agreements containing restrictive covenants when they were hired.

10

compensation package, making it incident to their employment and supported by adequate new consideration.

The restrictive covenants in the non-compete agreements are reasonably necessary for the protection of Therapy Source's legitimate business interests. Therapy Source provided ample evidence as to the business needs for the restrictive covenants to protect its customer lists, its pricing program and the professional it placed with its customers. The covenants signed protected these legitimate business interests.

The time duration and geographic range of the restrictions on Lidstone and Forsythe are reasonable. The Agreements in this case prohibited Lidstone and Forsythe's attempts to contact Therapy Source's customer base for two years. The manner of conducting business, which does not have geographic limits, required that the scope of the covenant be Therapy Source's customers. Forsythe and Lidstone remain free to contact schools and other educational entities which were not customers of Therapy Source, of which there are likely many. Lidstone acted as Regional Director of Therapy Source and was the primary source of contact with its many of customers. Forsythe was a Senior Account Director and also was the primary contact with other of Therapy Source's customers. This restriction is reasonable based on the nature of the work done by Lidstone and Forsythe at Therapy Source, visiting customers in these geographic areas. Accordingly, for all of the above reasons, Therapy Source is likely to prevail on the merits.

11

Case# 2018-00065-65 Docketed at Montgomery County Prothonotary on 10/02/2018 2:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Therapy Source will suffer immediate and irreparable harm if Lidstone and Forsythe are not enjoined because violating a restrictive covenant such as this clearly constitutes irreparable harm. Therapy Source has a significant interest in protecting its customer base, and in protecting the confidentiality of its business and pricing information. Lidstone and Forsythe have already obtained business from some of Therapy Source's customers. Further, some of the employees[5] of Therapy Source have been hired by Open Door Therapy. Testimony shows that Lidstone and Forsythe continued to contact customers of Therapy Source after the lawsuit began, and even after the first hearing on the petition for an injunction was filed. The evidence presented in this case clearly lead to the conclusion that the threat of continuous violation of the non-compete agreement constitutes immediate and irreparable harm to Therapy Source. Greater injury would result to Therapy Source in not entering the injunction than would result to Lidstone and Forsythe in not doing so. The injunction entered was narrowly tailored to reflect the terms of the employment restrictions to which Lidstone and Forsythe agreed. Greater injury would result to Therapy Source in not entering the injunction than would result to Lidstone and Forsythe in not doing so. This court also finds that the preliminary injunction will place the parties in the position they were before the Lidstone and Forsythe breached their employment contract, and will not adversely affect the public interest in so doing.

Lidstone and Forsythe admitted that they knowingly and willingly signed an agreement which contained several limitations on their employment or work

---

[5] Open Door placed "independent contractors" rather than employees.

12

Case# 2018-00065-65 Docketed at Montgomery County Prothonotary on 10/02/2018 2:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

were they to leave Therapy Source. They admit that for months they have been contacting and soliciting the business of customers with whom they worked while at Therapy Source, and have in fact obtained some of the business from those customers. Now Therapy Source is seeking to enforce the limitations in their employment agreements.

The Employment Agreement was signed when Forsythe and Lidstone were given a new compensation package. Therapy Source has shown that it will be irreparably harmed if no injunction is entered. The evidence is undisputed that Lidstone and Forsythe have for months been soliciting Therapy Source's customers and hiring its contractors or employees, in violation of the employment contract that they signed when they were given new positions and new compensation. The harm to Therapy Source caused by the violation of their agreement not to contact former customers is real and on-going.[6]

There is a strong likelihood it will succeed on the merits in its case.

This court finds Therapy Source's witnesses credible and its evidence convincing. The injunction entered is limited by its terms to the scope, time and place restrictions Lidstone and Forsythe agreed to when they signed their Employment Agreements. Keeping in mind the type of business at issue, and Lidstone and Forsythe's positions at Therapy Source, the court finds that the restrictions in the Employment Agreements are reasonable and necessary to

---

[6] Counsel for Appellants argued that Forsythe is a "solo parent" and their business is a "woman-owned start up business" and is in the red and that they are accruing legal fees. However, these considerations are not determinative. This court must decide the issue based upon the likelihood Therapy Source will succeed on the merits, as well as the irreparable harm their action are causing. While not an issue, the testimony shows that Lidstone and Forsythe were paid well at their jobs before they voluntarily left Therapy Source.

13

protect the legitimate business interests of Therapy Source. Thus, the evidence in this case clearly shows that "apparently reasonable grounds" exist for the injunctive relief entered, which merely requires that Appellants abide by the contract they signed.

In their Statement of Matters Complained of on Appeal, Appellants/Defendants argue that they were denied due process because they were not permitted additional time to present their case. This court held two days of hearings on Therapy Source's Petition. Appellants/Defendants' counsel cross examined Therapy Source's witnesses. Forsythe and Lidstone testified at length, and presented their view of the evidence in their testimony. The evidence was clear, and was in fact admitted to by Forsythe and Lidstone, that their employment agreements contained, *inter alia*, non-compete, non-solicitation and non-disclosure restrictions. Evidence was presented, and acknowledged by Forsythe and Lidstone in their testimony at the hearings, that they had contacted former customers and hired former employees of Therapy Source.[7] Post hearing briefs were submitted by both parties. Based on all the evidence presented and applicable law, this court entered an order which enjoined Appellants/Defendants from breaching what this court finds to be valid and reasonable restrictions on their actions. While Appellants/Defendants may have additional evidence to present in defense of the breach of contract and other claims in the complaint in this case, the right to and need for a preliminary injunction was clearly shown. The relief requested was needed timely, and no further testimony was required to

---

[7] It appears Lidstone and Forsythe continued these contacts in the time period between the two hearings.

14

Case# 2018-00065-65 Docketed at Montgomery County Prothonotary on 10/02/2018 2:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

show this need.[8] The evidence also showed that both when they began their jobs at Therapy Source and when they were given a new compensation package, Lidstone and Forsythe agreed to the terms which prevented them from taking the actions they took when they left their jobs. There was consideration for the restrictive covenants at issue. Finally, although the bond was initially omitted from the original order, this omission was corrected within two days, and bond has been posted.

## IV. CONCLUSION

The evidence presented provided reasonable grounds supporting the entry of the injunction in this case. It is respectfully submitted that the Order entered on August 20, 2018, as amended on August 23, 2018, should be **AFFIRMED**.

BY THE COURT:

_____
**ARTHUR R. TILSON, S. J.**

Cc: Robert Nagle, Esquire
    Melissa Murphy Weber, Esquire

---

[8] Counsel for Defendants pointed out that there is a "litany of cases" that say that "even having a hearing on a preliminary injunction is actually discretionary with the court." N.T. 7/24/18 at 115.

15