J-A10039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NORDON, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW SCHLISMAN | : | |
| | : | |
| Appellant | : | No. 1056 EDA 2020 |

Appeal from the Judgment Entered June 8, 2020
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2014-03020

| | | |
|---|---|---|
| NORDON, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW SCHLISMAN | : | No. 1186 EDA 2020 |

Appeal from the Judgment Entered June 8, 2020
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2014-03020-40

BEFORE: PANELLA, P.J., OLSON, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.: **FILED JUNE 28, 2021**

These are cross-appeals from a judgment following a non-jury trial
entered by the Court of Common Pleas of Bucks County in favor of Nordon,
LLC (Nordon) and against its former employee Andrew Schlisman (Schlisman)
in a breach of contract action in which Nordon sought damages and injunctive

---

* Retired Senior Judge assigned to the Superior Court.

relief for violation of a non-competition agreement and payment of the unpaid portion of a loan to Schlisman. The trial court found in favor of Nordon and against Schlisman both on Nordon's claims and on counterclaims that Schlisman had filed against Nordon. The trial court awarded Nordon $293,684.54 in damages, but denied injunctive relief. For the reasons set forth below, we affirm the trial court's judgment in its entirety.

Nordon is a food service equipment distributor and marketing agent. N.T., 12/9/19, at 27. Schlisman first worked for Nordon from 2001 to 2004. Trial Court Decision and Order, 3/31/20, at 1-2; N.T., 12/10/19, at 91, 93. In connection with that employment, Schlisman had agreed to a non-competition agreement that prohibited him from soliciting Nordon's customers and employees for a two-year period after leaving his employment in an area consisting of eastern Pennsylvania, southern New Jersey, and northern Delaware. Trial Court Decision and Order, 3/31/20, at 2; N.T., 12/10/19, at 91, 93; Plaintiff Ex. 4 at 2. In 2005, Schlisman left Nordon to run a competitor of Nordon that he had acquired, Gavin & Associates (Gavin). Trial Court Decision and Order, 3/31/20, at 2. This departure was amicable. *Id.*

In late 2008, Gavin and Schlisman were in financial difficulty and Schlisman approached Nordon to see if it had any interest in acquiring Gavin. Trial Court Decision and Order, 3/31/20, at 3; N.T., 12/9/19, at 43-44, 109; N.T., 12/10/19, at 103-10. In early 2009, Nordon and Schlisman reached an oral agreement under which Gavin would transfer its contracts with restaurant

industry manufacturing companies over to Nordon and Nordon would assume outstanding debts of Gavin and Schlisman and would hire Schlisman and Gavin's other employees. Trial Court Decision and Order, 3/31/20, at 3; N.T., 12/9/19, at 45-53, 112, 115-18. Because the amount of Gavin's and Schlisman's debts was not known at that time, the parties did, however, not finalize all terms of the agreement in 2009 and contemplated that a written agreement would be executed setting the amount that Nordon was to pay and memorializing all the terms of the agreement once that information was determined. Trial Court Decision and Order, 3/31/20, at 3-4; N.T., 12/9/19, at 44-51; N.T., 12/10/19, at 31. In February 2009, in accordance with the parties' oral agreement, Nordon hired Schlisman as its Vice President of Contract Sales. Trial Court Decision and Order, 3/31/20, at 4; N.T., 12/9/19, at 49-52.

In April 2010, after determining the amount of the debt that it would pay, Nordon drafted a written Asset Purchase Agreement between it, Gavin, and Schlisman and provided the draft agreement to Schlisman for his review. Trial Court Decision and Order, 3/31/20, at 5; N.T. 12/10/2019 at 34-37. Schlisman did not object to any of the terms of the Asset Purchase Agreement, and Nordon and Schlisman, individually and on behalf of Gavin, signed the Asset Purchase Agreement on July 7, 2010. Trial Court Decision and Order, 3/31/20, at 5-6; 12/9/19, at 61, 67; N.T. 12/10/2019 at 38-39, 44, 79, 129, 134-36. The Asset Purchase Agreement provided that Nordon purchased the

rights to Gavin's contracts with certain restaurant industry manufacturing companies listed in Section 1.2(a) of the agreement, including Duke Manufacturing Company (Duke), Stero, and Somat Company (Somat), and that Nordon would pay a total of $262,176.54 to Gavin and to third parties on Gavin's and Schlisman's behalf for these rights. Plaintiff Ex. 1 at 1-2. At the time the Asset Purchase Agreement was signed, only part of the $262,176.54 had been paid by Nordon and the parties agreed that $93,834.04 would be paid beginning June 19, 2010 in 28 equal monthly installments. N.T., 12/9/19, at 65; N.T., 12/10/19, at 143; Plaintiff Ex. 1 at 2.

The Asset Purchase Agreement contained the following non-competition agreement:

> 3.1 Covenant Not to Compete. **[Gavin] and [Schlisman] each agree, for so long as [Schlisman] remains an employee of [Nordon] and for the longer of (a) two (2) years following the termination of [Schlisman's] employment with [Nordon] and (b) two (2) years following the date [Nordon] makes the last Monthly Payment to the Bank (as described in Section 1.3(b) above) (the "Non-Competition Period"), not to compete with [Nordon] in any manner or capacity by engaging, directly or indirectly, in the business of acting as a manufacturer's representative or marketing agent to any of the companies listed in Section 1.2(a) above (the "Covered Business")**, or otherwise own, be employed by, consult with or otherwise render services to any person or entity engaged in the Covered Business within the territory defined by the Manufacturers' Agents Association for the Foodservice Industry ("MAFSI") as "Section 4" as in effect as of the date of this Agreement (and as such Section may be expanded by MAFSI during the Non-Compete Period) (the "Covered Area").
> …
>
>           *          *          *

3.3 <u>Agreement Not To Interfere</u>. **During the Non-Competition Period,** each of [Gavin] and [Schlisman] agree not to take any action to interfere with the relationships between [Nordon] or any subsidiary or affiliate of [Nordon], and their respective suppliers, customers, clients, or business partners. Each of **[Gavin] and [Schlisman] further agree not to induce or attempt to induce any manufacturer, customer, supplier, client, business partner, or other business relation of [Nordon] or any subsidiary or affiliate of [Nordon] to withdraw, curtail or cease doing business with [Nordon] or any subsidiary or affiliate of [Nordon]**, as applicable.

3.4 <u>Non-solicitation Agreement</u>. **During the Non-Competition Period, each of [Gavin] and [Schlisman] agree not to, directly or indirectly, induce or attempt to induce any employee of [Nordon]** or any subsidiary or affiliate of [Nordon] **to leave the employ of [Nordon]** or any subsidiary or affiliate of [Nordon], as applicable.

3.5 <u>Special Remedies and Enforcement</u>. [**Gavin] and [Schlisman] each hereby acknowledge and agree that the breach of any provision of Article III of this Agreement will cause [Nordon] irreparable injury and damage, and consequently [Nordon] shall be entitled, in addition to and without limitation of all other remedies available to it, to injunctive and equitable relief to prevent a breach or continued breach of this Agreement**, or any part of it, and to secure the enforcement of this Agreement. Such equitable remedies shall be cumulative and non-exclusive, being in addition to any and all other remedies [Nordon] may have. [Gavin] and [Schlisman] each hereby waive any requirement for securing or posting a bond in connection with [Nordon] obtaining any injunctive or other equitable relief. Further, **[Gavin] and [Schlisman] each agree that any breach of any provision of Article III of this Agreement shall automatically toll and suspend the period of restraint for the amount of time that the breach continues**.

Plaintiff Ex. 1 at 4-5 (emphasis added).

Schlisman remained employed by Nordon until November 2013. Trial Court Decision and Order, 3/31/20, at 7; N.T., 12/9/19, at 68-73. At

Schlisman's request, Nordon loaned Schlisman $35,000 in July 2013 without interest, to be repaid by $250 deductions from Schlisman's pay each pay period. Trial Court Decision and Order, 3/31/20, at 7; N.T., 12/9/19, at 79; N.T., 12/10/19, at 52-55, 122-24; Plaintiff Exs. 12, 13. Schlisman advised Nordon on November 1, 2013 that he intended to leave and start his own business and sent Nordon notice of his resignation on November 13, 2013, stating that his resignation was effective November 5, 2013. Trial Court Decision and Order, 3/31/20, at 7-8; N.T., 12/9/19, at 73-78, 85; N.T., 12/10/19, at 156, 160; Plaintiff Ex. 18. On November 20, 2013, Schlisman formed a competing business, Platinum Marketing Company (Platinum). Trial Court Decision and Order, 3/31/20, at 8; N.T., 12/9/19, at 84, 93-94; N.T., 12/10/19, at 184. Shortly after leaving Nordon, Schlisman solicited Duke to contract with Platinum, and Duke, Stero, and Somat terminated their contracts with Nordon and signed manufacturer representative contracts with Platinum. Trial Court Decision and Order, 3/31/20, at 8-9; N.T., 12/9/19, at 85-90; N.T., 12/10/19, at 160-70; Plaintiff Exs. 23, 25, 34, 37, 38, 41, 42, 43. Schlisman also hired the Nordon employee who worked with Duke and represented to Duke that he was going to hire her over a month before she left Nordon's employ. Trial Court Decision and Order, 3/31/20, at 9; N.T., 12/9/19, at 83-84, 91-92, 170-71; N.T., 12/10/19, at 170-73, 241-43. At the time that Schlisman left Nordon, $31,508 of the $35,000 had not been paid back and has never been paid. Trial Court Decision and Order, 3/31/20,

at 7, 15; N.T., 12/9/19, at 79-81, 93, 167; N.T., 12/10/19, at 55-57, 124-25; Plaintiff Exs. 14, 19 at 2.

On April 29, 2014, Nordon filed suit against Schlisman, seeking injunctive relief to enforce the non-competition agreement and breach of contract damages for the violation of the non-competition agreement and for the unpaid balance of the July 2013 loan.[1] In its complaint, captioned as "Nordon, Inc. v. Andrew Schlisman," Nordon identified itself as "Nordon, Inc." and alleged that it "is a Delaware limited liability company." Complaint ¶1. The complaint also alleged that "Nordon, Inc." was the party that entered into the Asset Purchase Agreement with Gavin and Schlisman that was attached as an exhibit to the complaint, although the agreement states that it is between Gavin, Schlisman, and "Nordon, LLC, a Delaware limited liability company." *Id.* ¶¶1, 8 & Ex. A at 1. Nordon filed a petition for a preliminary injunction on April 29, 2014, but there was no hearing or ruling on the petition for a preliminary injunction and Nordon took no further action to obtain any injunctive relief between 2014 and 2019. Docket Entries at 1-3. Schlisman filed an answer and new matter denying that the Asset Purchase Agreement's non-competition agreement was enforceable, denying that he breached his contract with Nordon, and asserting counterclaims against Nordon for

---

[1] Nordon's complaint also asserted claims that Schlisman misappropriated two items of merchandise, but those claims were abandoned by Nordon at trial.

fraudulent inducement to sign the Asset Purchase Agreement, breach of contract, unjust enrichment, and unpaid wages.

The trial court held a two-day bench trial of Nordon's claims and Schlisman's counterclaims on December 9 and 10, 2019. At the close of the evidence the trial court directed the parties to file proposed findings of fact and conclusions of law after the transcripts of testimony were filed. On February 27, 2020, shortly before the parties filed their proposed findings of fact and conclusions of law, Nordon filed a motion for leave to amend to change the name of the plaintiff from "Nordon, Inc." to "Nordon LLC." On March 4, 2020, the trial court entered an order granting the motion to amend and ordering that "the pleadings in this matter are amended to reflect Nordon LLC as Plaintiff." Trial Court Order, 3/4/20.

On March 31, 2020, the trial court entered its decision adjudicating the parties' claims. In this decision, the trial court found that the Asset Purchase Agreement's non-competition agreement was enforceable and that Schlisman breached it. Trial Court Decision and Order, 3/31/20, at 10-14. The trial court also found that Nordon had loaned Schlisman $35,000 that Schlisman failed to fully pay back. *Id.* at 15. The trial court rejected all of Schlisman's counterclaims, finding that Nordon did not fraudulently induce him to sign the Asset Purchase Agreement, that Nordon did not breach its agreement with him and Gavin, and that Nordon that did not owe him any money. *Id.* at 15-16. The trial court awarded Nordon $262,176.54 in damages for Schlisman's

breach of the non-competition agreement and $31,508 in damages on the loan claim, but denied Nordon's request for an injunction. *Id.* at 15-17.

Both parties timely filed motions for post-trial relief. The trial court entered an order on April 30, 2020 denying Schlisman's motion for post-trial relief and an order on June 4, 2020 denying Nordon's motion for post-trial relief. Judgment was entered on June 8, 2020 in favor of Nordon and against Schlisman in the amount of $293,684.54. Both parties filed timely appeals from this judgment.[2]

Schlisman in his appeal argues 1) that the trial court erred in granting Nordon's motion to amend; 2) that he was entitled to judgment notwithstanding the verdict (JNOV) on Nordon's claim for breach of the non-competition agreement because there was no enforceable non-competition

---

[2] Schlisman filed his appeal prematurely on April 29, 2020. Because judgment was subsequently entered on June 8, 2020, his appeal is timely and is properly before us. Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"); *Century Indemnity Co. v. OneBeacon Insurance Co.*, 173 A.3d 784, 788 n.1 (Pa. Super. 2017). Nordon's cross-appeal, filed June 8, 2020, was likewise timely, as it was filed on the day that final judgment was entered, even though it was filed more than 14 days after Schlisman's notice of appeal. Norton also filed an application in this Court to correct the caption in Schlisman's appeal, which was captioned "Nordon, Inc. v. Andrew Schlisman, Appellant," to "Nordon LLC v. Andrew Schlisman, Appellant." Because the parties "as they appeared on the record of the trial court at the time the appeal was taken," Pa.R.A.P. 904(b)(1), were Nordon, LLC and Schlisman, we grant this application and have amended the caption in these appeals to identify the plaintiff in Schlisman's appeal as "Nordon, LLC." We have also corrected the date of the judgment appealed in both appeals and the identity of the appellant in Nordon's appeal.

agreement; 3) that he was entitled to JNOV on that claim even if the non-competition agreement was enforceable, because Nordon had breached its contract with him and Gavin and his conduct did not constitute a breach the non-competition agreement; and 4) that the damages award was excessive. Nordon challenges only the trial court's denial of injunctive relief. We address each of these issues in turn.

**Nordon's Motion to Amend**

Schlisman argues that the trial court erred in granting Nordon's motion to amend because the amendment substituted a new plaintiff after the statute of limitations had expired. We do not agree.

Under Pennsylvania Rule of Civil Procedure 1033, "[**a] party**, either by filed consent of the adverse party or **by leave of court, may at any time** change the form of action, add a person as a party, **correct the name of a party**, or otherwise amend the pleading." Pa.R.C.P. 1033(a) (emphasis added). Leave to amend should be liberally granted at any stage of the proceedings, unless the delay in seeking to amend has prejudiced the adverse party or the amendment is prohibited by law. ***Blackwood, Inc. v. Reading Blue Mountain & Northern Railroad Co.***, 147 A.3d 594, 598 (Pa. Super. 2016); ***Hill v. Ofalt***, 85 A.3d 540, 557 (Pa. Super. 2014); ***Miller v. Stroud Township***, 804 A.2d 749, 754 (Pa. Super. 2002). A plaintiff may amend its complaint to correct the name of a person that is already a party to the action after the statute of limitations has expired, but may not amend to add or

substitute a new and different party that had no notice of the action. ***Phillips v. Lock***, 86 A.3d 906, 915-16 (Pa. Super. 2014); ***Jacob's Air Conditioning & Heating v. Associated Heating & Air Conditioning***, 531 A.2d 494, 496 (Pa. Super. 1987); Pa.R.C.P. 1033(b), (c). The test for whether an amendment changing the name of a party is permissible after expiration of the statute of limitations is

> whether the proposed amendment merely corrects a party name or adds a new party to the litigation. If an amendment constitutes a simple correcting of the name of a party, it should be allowed, but if the amendment in effect adds a new party, it should be prohibited.

***Phillips***, 86 A.3d at 915 (quoting ***Jacob's Air Conditioning & Heating***).

Here, the amendment changing the name of the plaintiff from "Nordon, Inc." to "Nordon, LLC" was a correction of the name of an existing party, not a substitution of a new party, and caused no surprise or prejudice. The complaint was clear on its face that the plaintiff was the Delaware limited liability company that entered into the Asset Purchase Agreement with Schlisman, the entity that is in fact Nordon, LLC. Complaint ¶¶1, 8 & Ex. A at 1; Defendant Ex. 4.[3] The entity Nordon, Inc. is a Pennsylvania corporation, not a name for a different Delaware limited liability company. Defendant Ex.

---

[3] Counsel for Schlisman asserted at oral argument that the change to Nordon, LLC cannot be a mere change of name because Nordon, LLC was not in existence at the time that the parties reached an oral agreement in February 2009. This contention is patently false. Schlisman's own trial exhibit demonstrates that Nordon, LLC was formed in October 2006 and was therefore in existence at the time of all the negotiations and agreements at issue. Defendant Ex. 4.

2. The trial court therefore did not err in granting Nordon's motion to amend. *See Rullex Co., LLC v. Tel-Stream, Inc.*, 232 A.3d 620, 623 n.3 (Pa. 2020) (stating with respect to a change of the plaintiff's name from "Rullex, Inc.," the name in the complaint, to "Rullex Co., LLC," the name of the entity that was a party to the contracts attached as exhibits to the complaint, "we do not consider this minor inconsistency as having any substantive relevance").

**Enforceability of the Non-Competition Agreement**

Whether the trial court erred in denying Schlisman's motions for JNOV is a question of law subject to our plenary review. *Shamnoski v. PG Energy*, 858 A.2d 589, 593 (Pa. 2004); *Phillips v. A–Best Products Co.*, 665 A.2d 1167, 1170 (Pa. 1995). There are two bases on which JNOV may be granted: (1) where the movant is entitled to judgment as a matter of law and (2) where the evidence is such that no two reasonable minds could disagree that the judgment should have been in favor of the movant. *Linde v. Linde*, 220 A.3d 1119, 1140 (Pa. Super. 2019); *United Environmental Group, Inc. v. GKK McKnight, LP*, 176 A.3d 946, 959 (Pa. Super. 2017). In determining whether either of these bases for JNOV has been established, this Court must view the evidence in the light most favorable to the party that prevailed at trial. *Linde*, 220 A.3d at 1140; *Reott v. Asia Trend, Inc.*, 7 A.3d 830, 835 (Pa. Super. 2010), *aff'd*, 55 A.3d 1088 (Pa. 2012). Questions of credibility and conflicts in the evidence are for the factfinder to resolve and this Court cannot reweigh the evidence. *Shamnoski*, 858 A.2d at 593; *United Environmental Group*,

176 A.3d at 962. If there is any basis upon which the factfinder could have properly made its award, the denial of the motion for JNOV must be affirmed. **Linde**, 220 A.3d at 1140; **United Environmental Group**, 176 A.3d at 962.

A non-competition agreement entered into incident to an employment relationship between the parties is enforceable if it is supported by consideration, its restrictions are designed to protect the employer's legitimate interests, and it is reasonably limited in duration and geographic scope. **Rullex Co.**, 232 A.3d at 624-25; **Socko v. Mid-Atlantic Systems of CPA, Inc.**, 126 A.3d 1266, 1274 (Pa. 2015). Non-competition agreements ancillary to agreements for the purchase and sale of a business or its assets are also enforceable if designed to protect legitimate interests of the purchaser. **Scobell Inc. v. Schade**, 688 A.2d 715, 718 (Pa. Super. 1997); **Geisinger Clinic v. DiCuccio**, 606 A.2d 509, 518 (Pa. Super. 1992); **Worldwide Auditing Services, Inc. v. Richter**, 587 A.2d 772, 776 (Pa. Super. 1991). Non-competition agreements ancillary to the purchase and sale of a business or its assets are subject to a less rigorous reasonableness examination than non-competition agreements entered into solely as part of an employment relationship. **Pittsburgh Logistics Systems, Inc. v. BeeMac Trucking, LLC**, 249 A.3d 918, 935 (Pa. 2021); **Scobell**, 688 A.2d at 718; **Worldwide Auditing Services**, 587 A.2d at 776.

A non-competition agreement is not enforceable unless consideration is given in exchange for the covenant not to compete. **Rullex Co.**, 232 A.3d at

624-29; *Socko*, 126 A.3d at 1274-76; *Shepherd v. Pittsburgh Glass Works, LLC*, 25 A.3d 1233, 1243 (Pa. Super. 2011). Employment of the party agreeing not to compete is sufficient consideration if the parties agree to the non-competition provision at the start of the employment relationship or the employee knows that the non-competition agreement is a condition of employment at the time he starts the job. *Rullex Co.*, 232 A.3d at 625-28; *Socko*, 126 A.3d at 1275; *Pulse Technologies, Inc. v. Notaro*, 67 A.3d 778, 781 (Pa. 2013). After the employment relationship has begun, continued employment on the same terms is not sufficient consideration for a non-competition agreement, and, absent new consideration at the time of the non-competition agreement, the non-competition agreement is not enforceable. *Rullex Co.*, 232 A.3d at 627; *Socko*, 126 A.3d at 1275-76. If there is an oral agreement to the substantive terms of the non-competition provision at the outset of employment, however, there is consideration for the non-competition agreement, even if the written agreement is not executed until a later date. *Rullex Co.*, 232 A.3d at 626-28.

Schlisman argues that the non-competition agreement was not enforceable on three grounds: 1) that there was no consideration because the Asset Purchase Agreement was signed over a year after the parties agreed to Nordon's acquisition of Gavin's manufacturer contracts and Schlisman began his employment with Nordon; 2) that the restrictions that it imposed were not reasonable; and 3) that there was no intent that the Asset Purchase

Agreement would be enforceable because Nordon allegedly told him that he was signing the Asset Purchase Agreement only for accounting purposes. None of these arguments has merit.

Contrary to Schlisman's contentions, the non-competition agreement was contemporaneous with the start of Schlisman's employment. While Schlisman signed the Asset Purchase Agreement in July 2010, over a year after he began his employment, the trial court found that the parties had reached an oral agreement by early 2009, before he started his employment, and that part of this oral agreement was an agreement that Schlisman would be subject to a two-year non-competition agreement. Trial Court Decision and Order, 3/31/20, at 4, 13; Trial Court Opinion, 6/4/20, at 4, 16. This finding is supported by the evidence at trial. Nordon's witnesses testified that one of the terms of the oral agreement that it negotiated with Schlisman was that he would be subject to such a non-competition agreement and that Schlisman knew when he started his employment that he was subject to such a non-competition agreement. N.T., 12/9/19, at 48-49, 120; N.T., 12/10/19, at 30-31, 77-78. Because the trial court found that Schlisman agreed to the non-competition agreement at the start of his employment, his employment constituted consideration for the non-competition agreement, even though the written Asset Purchase Agreement was not executed at that time. ***Rullex Co.***, 232 A.3d at 626-28.

Moreover, Schlisman received additional consideration for the non-competition provision at the time that he signed the Asset Purchase Agreement. The trial court found that although the parties had reached an agreement in early 2009, they had not agreed on critical terms such as the amount of the debt that Nordon would pay and that in early 2009 they were performing some of the terms before they reached an agreement on the amount that Nordon would pay. Trial Court Decision and Order, 3/31/20, at 3-4; Trial Court Opinion, 6/4/2020, at 3-4, 13. Those findings are supported by the record. N.T., 12/9/19, at 45-53, 55-57, 63-66, 97, 110; N.T., 12/10/19, at 13-14, 67, 70-71, 74.

For a contract to be binding, the parties must agree to the essential terms of the contract and those essential terms must be sufficiently definite for a court to determine whether there is compliance with its terms. *United Environmental Group*, 176 A.3d at 963; *Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 783 (Pa. Super. 2006); *Lackner v. Glosser*, 892 A.2d 21, 30-32 (Pa. Super. 2006). Because the parties had not agreed on the amount of Gavin's and Schlisman's debt that Nordon would pay before the Asset Purchase Agreement was signed, Nordon was not legally bound to pay amounts of that debt that it had not yet paid. Nordon agreed in the Asset Purchase Agreement to pay over $90,000 of Gavin's and Schlisman's debt that it had not paid when the parties signed the Asset Purchase Agreement. Plaintiff Ex. 1 at 2. Nordon's agreement to make those additional payments

was therefore new consideration given to Schlisman in July 2010 for his agreement to the Asset Purchase Agreement, including its non-competition provision.

Schlisman's claim that the restrictions imposed by the non-competition agreement were unreasonable is likewise without merit. The non-competition period set by the Asset Purchase Agreement is two years. Plaintiff Ex. 1 at 4. A two-year non-competition period in an agreement for sale of a business or business assets is reasonable and enforceable. *Worldwide Auditing Services*, 587 A.2d at 774-77; *Geisinger Clinic*, 606 A.2d at 514, 518-19. The scope of the restriction was also reasonable because it was geographically limited to the eastern Pennsylvania, New Jersey and Delaware area where Nordon does business and barred only Schlisman's representation of specific manufacturers that were the subject of the Asset Purchase Agreement and interference with Nordon's relationship with its other customers and clients, not Schlisman's ability to work as a manufacturer's representative for other food service equipment manufacturers, even in that region. Plaintiff Ex. 1 at 1-2, 4; N.T., 12/9/19, at 66. Contrary to Schlisman's contentions, the fact that the non-competition agreement barred him from representing the manufacturers that he brought to Nordon makes the restriction reasonable, not unreasonable, as those were the very companies that were the value that Nordon was receiving in consideration for its payment of over $260,000 of his and Gavin's debts.

Schlisman's remaining argument, that the Asset Purchase Agreement was only for accounting purposes and not intended to be binding fails because it was a disputed issue of fact that the trial court resolved in Nordon's favor and against Schlisman. The trial court rejected Schlisman's testimony on which this claim is based as not credible and found that Nordon did not tell Schlisman that the Asset Purchase Agreement was only for accounting purposes and would not be enforced. Trial Court Decision and Order, 3/31/20, at 15-16; Trial Court Opinion, 6/4/2020, at 13-14. Those findings are supported by the record. N.T., 12/10/19, at 34-45, 81-83; Defendant Ex. 19.

Because facts found by the trial court and supported by the record establish that there was consideration for the Asset Purchase Agreement's non-competition agreement and that it was reasonable and intended by the parties to be enforceable, the trial court did not err in rejecting Schlisman's challenges to the enforceability of the non-competition agreement and denying his motion for JNOV.

**Schlisman's Breach of the Non-Competition Agreement**

Schlisman argues that he could not be liable for breach of the non-competition agreement because Nordon breached the parties' contract in 2009 and 2010 by failing to timely pay off Gavin's debts. This argument fails because it is contrary to the trial court's factual findings.

If a party materially breaches a contract, the other party is relieved of its obligations under the contract, and the party who materially breached

cannot enforce the contract against the other party. *Linde v. Linde*, 210 A.3d 1083, 1091-92 (Pa. Super. 2019); *McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa. Super. 2013). The trial court, however, found that Nordon's obligation under the contract was to pay the amount of debt set forth in the Asset Purchase Agreement in accordance with its terms and that Nordon did not breach its contract with Schlisman and Gavin. Trial Court Decision and Order, 3/31/20, at 4-6, 16; Trial Court Opinion, 6/4/2020, at 13. These findings are supported by the evidence. N.T., 12/9/19, at 50-51, 55-57, 63-66, 97; N.T., 12/10/19, at 13-14, 19, 66-67, 70-76, 111, 143-44.

Schlisman also argues that he did not violate the non-competition provision of the Asset Purchase Agreement 1) because its restrictions had already terminated; 2) because he only represented the manufacturers that he brought to Nordon; and 3) because he allegedly did not induce his assistant at Nordon to leave Nordon. None of these arguments has merit.

The first two of these arguments are invalidated by the language of the Asset Purchase Agreement. The Asset Purchase Agreement clearly provided that the two-year non-competition period was to last until the expiration of two years after the last payment by Nordon or two years after Schlisman's Nordon employment ended, whichever was longer. Plaintiff Ex. 1 at 4 (stating that the non-competition provisions were in effect "for **the longer of (a) two (2) years following the termination of [Schlisman's] employment with [Nordon]** and (b) two (2) years following the date [Nordon] makes the last

Monthly Payment to the Bank (as described in Section 1.3(b) above)") (emphasis added). The non-competition period was therefore in effect from November 2013 to November 2015, when Schlisman engaged in his competing activities, even though Nordon's last payment under the Asset Purchase Agreement was more than two years before November 2013. The Asset Purchase Agreement also clearly prohibited Schlisman from representing the manufacturers that he brought to Nordon, including the specific companies that he represented immediately after leaving Nordon, Duke, Stero and Somat. Plaintiff Ex. 1 at 1-2, 4.

The third argument, that Schlisman did not induce a Nordon employee to leave to work for him, was a disputed issue of fact that the trial court resolved against Schlisman. Not only did the evidence show that the employee left Nordon to join Schlisman's marketing company in March 2014, but Schlisman admitted in his testimony that in January 2014, while that employee was still employed by Nordon, he represented to one of the manufacturers that he solicited that the employee would be employed by his marketing company doing all of the same sales support work that she was doing for Nordon. N.T., 12/9/19, at 83-84, 91-92, 170-71; N.T., 12/10/19, at 169-73, 241-43. The trial court could therefore reasonably infer that he began offering to hire her while she was still a Nordon employee.

Because the evidence at trial was sufficient for the trial court to find that Nordon did not breach its contract with Schlisman and Gavin and that

Schlisman did breach the non-competition provisions of that contract, the trial court properly denied Schlisman's other motions for JNOV.

**The Trial Court's Damages Award**

Schlisman asserts that the trial court's damage awards for the loan claim and the breach of the non-competition agreement are not supported by the record.[4]  We do not agree.

Schlisman challenges the $31,508 that the trial court awarded Nordon on the loan claim on the ground that Nordon allegedly owed him Gavin commissions that it collected and commissions for 2013 that exceeded the loan balance and should have been applied to pay back the loan.  This argument, like so many of Schlisman's arguments in this appeal, fails because it is based on disputed factual contentions that the trial court rejected.  The trial court found that Schlisman's claims of entitlement to commissions were not credible and found that Nordon did not owe him any unpaid commissions.  Trial Court Decision and Order, 3/31/20, at 7, 15-16; Trial Court Opinion, 6/4/20, at 7.  These findings are supported by the evidence.  N.T., 12/9/19, at 48, 53-54, 79-80, 120, 167; N.T., 12/10/19, at 12-13, 15-16, 30-32, 45-52, 56-57, 79-80.

---

[4] Schlisman frames this argument as a request that this Court order a remittitur.  That relief, however, is unavailable here.  Remittitur can only be granted where the case was tried to a jury, not where the damages award was made by a judge after a bench trial.  ***Refuse Management Systems, Inc. v. Consolidated Recycling & Transfer Systems, Inc.***, 671 A.2d 1140, 1149 (Pa. Super. 1996).

Schlisman asserts that the $262,176.54 in damages that the trial awarded for breach of the non-competition agreement was excessive and unsupported because Nordon did not introduce any evidence of profits that it lost or that Schlisman received from his representation of manufacturers in violation of non-competition agreement.

The determination of damages is within the province of the trial court as fact-finder, and will not be disturbed on appeal absent a showing that the amount awarded resulted from prejudice, partiality or corruption, or that the award does not bear a reasonable resemblance to the evidence of damages at trial. *Witherspoon v. McDowell-Wright*, 241 A.3d 1182, 1187 (Pa. Super. 2020); *Boehm v. Riversource Life Insurance Co.*, 117 A.3d 308, 328 (Pa. Super. 2015). The amount of damages need not be determined with complete precision, but need only be proved with reasonable certainty, and evidence of damages may include probabilities and inferences. *Witherspoon*, 241 A.3d at 1188; *Morin v. Brassington*, 871 A.2d 844, 852 (Pa. Super. 2005).

> The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable and inferential, as well as upon direct and positive, proof. Thus, the law does not demand that the estimation of damages be completely free of all elements of speculation.

*Witherspoon*, 241 A.3d at 1187-88 (quoting *Delahanty v. First Pennsylvania Bank*, 464 A.2d 1243 (Pa. Super. 1983)). Moreover, uncertainty as to the amount of damages does not bar a recovery where it is

clear that the defendant's conduct caused damages. **Smith v. Penbridge Assocs., Inc.**, 655 A.2d 1015, 1021 (Pa. Super. 1995); **Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.**, 496 A.2d 840, 846 (Pa. Super. 1985).

Nordon introduced evidence that Schlisman, in the November 2013 to November 2015 non-competition period, received $268,055.99 in commissions from Duke, Stero, and Somat, and another manufacturer that the non-competition agreement prohibited Schlisman from representing. Plaintiff Ex. 53; N.T., 12/10/19, at 180-81. In addition, the evidence showed that Nordon paid $262,176.54 under the Asset Purchase Agreement to acquire the representation of those manufacturers and that Schlisman's violation of the non-competition agreement deprived Nordon of that business. Plaintiff Ex. 1 at 1-2; N.T., 12/9/19, at 85-90; Plaintiff Exs. 23, 24, 25. Given this evidence, the trial court's damages award is a reasonable estimate of the damages that Nordon suffered as a result of Schlisman's breach of the non-competition agreement. Accordingly, we affirm on this issue.

### The Denial of Injunctive Relief

Nordon argues in its cross-appeal that because the non-competition agreement was enforceable and Schlisman had violated it, the trial court erred in denying its request for an injunction barring Schlisman from representing the manufacturers that he took from Nordon. This argument, too, is without merit.

A permanent injunction may be granted only where the plaintiff has established that its right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting injunctive relief. ***Kuznik v. Westmoreland County Board of Commissioners***, 902 A.2d 476, 489 (Pa. 2006); ***Eagleview Corporate Center Association v. Citadel Federal Credit Union***, 243 A.3d 764, 773 (Pa. Cmwlth. 2020). The equitable defense of laches applies to claims for injunctive relief and is grounds for denial of an injunction where the plaintiff has delayed in seeking an injunction and that delay has prejudiced the defendant. ***Holiday Lounge, Inc. v. Shaler Enterprises Corp.***, 272 A.2d 175, 176-77 (Pa. 1971); ***Martin v. Adams County Area Vocational Technical School Authority***, 313 A.2d 785, 786-87 (Pa. Cmwlth. 1973).

The trial court denied injunctive relief on the grounds that the two-year non-competition period expired in 2015, that Nordon was fully compensated by the damages award, and that Nordon's delay in pursuing injunctive relief made it inequitable to grant an injunction. Trial Court Decision and Order, 3/31/20, at 15; Trial Court Opinion, 6/18/2020, at 2.

Nordon argues that the expiration of the two-year period does not bar an injunction because the Asset Purchase Agreement extends the non-competition period during the period that Schlisman is in violation. Both of

the trial court's other grounds, however, are sufficient by themselves to support its denial of injunctive relief.

The fact that Nordon was awarded over $200,000 in damages establishes that Nordon did not satisfy the requirement of injunctive relief that it show that it suffered an injury that cannot be compensated by damages. In addition, the trial court found that Nordon took no action to have it issue an injunction until 2019, four years after the end of the non-competition period and that the delay made an injunction punitive and inequitable. Nordon's request for injunctive relief was therefore also barred by laches.

Nordon cites no authority holding that a trial court is required to grant an injunction under these circumstances. ***Worldwide Auditing Services***, on which Nordon relies, does not support grant of an injunction here. In ***Worldwide Auditing Services***, this Court affirmed a trial court's injunction enforcing a non-competition agreement beyond the non-competition period where the parties' contract provided that violation would extend the non-competition period. 587 A.2d at 774-77. The injunction in that case, however, was granted before the original two-year competition period had expired, ***id.*** at 774-75, not four years after the original non-competition period expired, and there was no finding that the plaintiff delayed seeking injunctive relief. In addition, although the plaintiff in ***Worldwide Auditing Services*** received both injunctive relief and a damages award, this Court specifically noted that the damages award might constitute an adequate remedy at law that would

negate the plaintiff's right to injunctive relief, but did not resolve the issue because it was waived. *Id.* at 773 n.1.

Because the trial court properly found that Nordon failed to satisfy the requirements for a permanent injunction and also properly found that Nordon's request for an injunction was barred by laches, we affirm its denial of injunctive relief.

### Conclusion

For the foregoing reasons, we conclude that the trial court did not err in granting Nordon's motion to amend, in denying Schlisman's motions for JNOV and his challenges to the damages award, or in denying injunctive relief. Accordingly, we affirm the trial court's judgment.

Judgment affirmed. Application to correct caption in 1056 EDA 2020 granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2021

- 26 -